2009 OK 28

**Donna Kay BERNAL, personal representative of the estate of Billy Bernal, Plaintiff/Appellant**

v.

**CHARTER COUNTY MUTUAL INSURANCE COMPANY, Defendant/Appellee.**

No. 103,329.

Supreme Court of Oklahoma.

May 12, 2009.

Justin Wade Perry, Lampkin & Associates, Oklahoma City, OK, Rex Travis and Paul D. Kouri, Oklahoma City, OK, for Plaintiff/Appellant.

Stefan Wenzel, Oklahoma City, OK, for Defendant/Appellee.[1]

OPALA, J.

¶1 The question presented for review is whether the Court of Civil Appeals (COCA) erred when it affirmed the trial court's summary judgment for defendant/appellee by whose terms Texas law is applied to an insurer's uninsured/underinsured motorist (UM/UIM, hereafter called UM) liability coverage for a loss in a vehicular accident that occurred in Oklahoma. The insurance policy in question was written in Texas and the insured vehicle was registered and principally garaged in that state. We agree that Texas law is to be applied to today's cause. COCA's opinion is vacated and the trial court's summary disposition affirmed.

## I.

## ANATOMY OF THE LITIGATION

¶2 On 27 July 2001 Oklahoma resident Billy Bernal, a passenger in a truck driven by Brandon Wiggins, was fatally injured in an in-state automobile accident. The truck was owned by Brandon's grandmother, Dorothy Wiggins, a Texas resident. It was insured by defendant Charter County Mutual Insurance Company (Charter) and principally garaged in Texas. The Charter policy, written in Texas and issued to Dorothy Wiggins, provides for $20,010 in liability coverage and the same limit for uninsured/underinsured motorist coverage.

¶3 The UM benefits from Billy's Oklahoma policy were paid to appellant Donna Kay Bernal (Bernal) who is Billy's mother and personal representative of his estate. Charter paid the liability limit of its policy but refused to pay any UM coverage benefits. The latter liability was denied based on Charter's policy provision that excluded the covered vehicle from the coverage for an uninsured motor vehicle.[2] Bernal seeks full payment of the UM policy benefits that would protect Billy because of his passenger

---

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

2. The pertinent portions of the Charter policy provide:
PART C—UNINSURED/UNDERINSURED MO-TORISTS COVERAGE
* * * *
B. "Covered person" as used in the Part means:
1. You or any family member;
2. Any other person occupying your covered auto;
* * * *
D.I. "Uninsured motor vehicle" means a land motor vehicle or trailer or any type,
* * * *
4. Which is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident but its limit of liability either;
a. is not enough to pay the full amount the covered person is legally entitled to recover as damages; or
b. has been reduced by payment of claims to an amount which is not enough to pay the full amount the covered person is legally entitled to recover as damages.
II. However, "uninsured motor vehicle" does not include any vehicle or equipment:
1. Owned or furnished or available for the regular use of you or any family member.
* * * *
(emphasis supplied)

status in the truck insured by Charter.[3] The parties agree that (1) the accident was the result of Brandon Williams' negligence, and (2) Brandon's own insurance coverage was insufficient to provide full compensation for Billy's death.

¶ 4 Bernal sought summary judgment urging Oklahoma law should apply to the claim. Charter filed a response brief in opposition to Bernal's motion and a cross-motion for a like disposition in its favor. It urged Texas law is applicable. The trial judge denied Bernal's motion and granted summary judgment for Charter. The Court of Civil Appeals, Div. II, affirmed the trial court's decision. Bernal's certiorari paperwork brings to our attention an earlier COCA, Div. III, opinion that appears to be in conflict with the decision rendered below. We granted certiorari to resolve this interdivisional conflict.

## II.

### STANDARD OF REVIEW

■ ¶ 5 Summary relief issues stand before us for de novo review.[4] All facts and inferences must be considered in the light most favorable to the non-movant.[5] Just as nisi prius courts are called upon to do in deciding in the first instance whether summary relief is warranted, so also appellate tribunals must bear an affirmative duty to test de novo for its legal sufficiency all evidentiary material received in summary process as movant's support for the relief that is to be granted.[6] Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to the summary relief that is sought.

## III.

### COCA'S OPINION AND THE PARTIES' CERTIORARI ARGUMENTS

■ ¶ 6 COCA affirmed the trial court's decision. It concluded that Oklahoma's choice-of-law rule requires that Texas law govern this cause. That rule-applicable in automobile vehicle insurance cases-was earlier announced by this court in *Bohannan v. Allstate Ins. Co.*[7] It provides *the validity, interpretation, application and effect of the provisions of a motor vehicle insurance contract should be determined in accordance with the laws of the state in which the contract was made, unless (1) those provisions are contrary to Oklahoma's public policy or (2) the facts demonstrate another jurisdic-*

---

3. Bernal's cause was originally filed against Bridgestone Firestone, Bridgestone Firestone North America Tire, Ford Motor Company, and Firestone Tire and Rubber Company. She later amended her petition to include Charter County Mutual Insurance Company and finally dismissed without prejudice the former defendants in the cause.

4. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is reviewable by a de novo standard. *Brown v. Nicholson*, 1997 OK 32, ¶ 5, 935 P.2d 319, 321. *See also Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084 ("Issues of law are reviewable by a de novo standard and an appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings.")

5. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

6. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).

7. *Bohannan v. Allstate Ins. Co.*, 1991 OK 64, 820 P.2d 787. For the facts and the court's holding in *Bohannan* see part IV of today's opinion.

According to the summary judgment, the *Bohannan* rule is applicable solely in those cases where proceeds under an Oklahoma insurance policy are sought to be used as a credit or offset against recovery under a policy issued in another state. A *Bohannan* analysis requires two contracts, one from Oklahoma and another that is foreign, with proceeds from the Oklahoma policy used to limit those due under the foreign policy. Although COCA affirmed the trial court's order, it ruled its language to be too broad. This was so because the trial court's terms could presumably include a credit against liability coverage as well as UM coverage. COCA opinion, p. 16, ¶ 32. In *Bohannan* the court ruled Oklahoma's financial responsibility laws do not prohibit allowing credit for liability under other coverage. See *infra*, note 29.

*tion has the most significant relationship with the subject matter and the parties.*[8]

¶7 Bernal urges both *Bohannan* exceptions apply to her cause. She first asserts Charter's policy exclusion—of a vehicle that is "[o]wned, furnished or available for the regular use of the insured or any family member"[9]—from the policy's definition of an uninsured motor vehicle violates Oklahoma's public policy. According to Bernal, because UM coverage must, for Oklahoma policies, follow the person rather than the vehicle, Charter's exclusion violates this state's public

policy and is hence unenforceable. For support of this position she brings to the court's attention *Lewis v. State Farm Mut. Auto. Ins. Co*, a decision by COCA, Div. III.[10]

¶8 Charter responds the public-policy exception is inapplicable where a foreign insurance policy does not operate to deprive an insured of UM benefits due under a policy issued and paid for in accordance with Oklahoma law. For support it cites to *Bohannan* and two COCA decisions: *Herren v. Farm Bureau Mut. Ins. Co.*,[11] and *Burgess v. State*

8. *Bohannan, supra* note 7, at ¶ 30, at 796.

9. For the full text of the policy exclusion see *supra* note 2.

10. *Lewis v. State Farm Mut. Auto. Ins. Co.*, 1992 OK CIV APP 106, 838 P.2d 535, teaches a provision in an insurance policy issued in another state that excludes from the definition of an "underinsured vehicle" any land motor vehicle "insured under the liability coverage of this policy" violates Oklahoma public policy. The facts in *Lewis* are similar to those in today's case. Lewis was injured and her infant son killed in a single-vehicle accident in Oklahoma. The vehicle was owned by an Arkansas resident and driven with the owner's permission by another resident of that state. The owner's insurer paid the liability limits of its policy. It denied Lewis' claims for UIM coverage based on a policy provision that excluded from the definition of an underinsured vehicle any land motor vehicle "insured under the liability coverage of this policy." **No Oklahoma insurance policy was implicated.** The sole issue was whether the exclusionary language in the Arkansas policy, although valid there, was in violation of Oklahoma's public policy and hence void. The Court of Civil Appeals (COCA) affirmed the trial judge's summary disposition for the insured and ruled that the exclusion violated Oklahoma's public policy. This was so, according to COCA, because vehicle liability coverage stems not from vehicle ownership but from coming within the definition of an insured. Any attempt to tie uninsured motorist coverage to a motor vehicle alone, rather than to one entitled to coverage as an insured, must fail. *Lewis*, at ¶7, at 537 (citing *State Farm Mutual Automobile Ins. Co. v. Wendt*, 1985 OK 75, ¶ 8, 708 P.2d 581, 585).

In *Wendt, supra*, the court responded to a certified question from a federal court. It held once a person is insured under an uninsured motorist policy, subsequent exclusions inserted by the insurer in the policy which dilute and impermissibly limit UM coverage are void as violative of the public policy espoused by the terms of § 3636. *Wendt*, at ¶4, at 583. The policy provisions at issue excluded a named insured, residents of the insured's household and

the insured motor vehicle from uninsured motorist coverage. According to the court, coverage stemmed not from owning an automobile but, rather, from coming within the definition of an insured under any given insurance contract. Any attempt to tie uninsured motorist coverage to vehicles alone, rather than to people, must fail. *Wendt*, at ¶8, at 585.

Bernal also cites to *Heavner v. Farmers Ins. Co.*, 1983 OK 51, 663 P.2d 730, for the proposition that Oklahoma's public policy prevents an insurance company from limiting its insured to liability proceeds where both liability and UM coverage are purchased in one policy. The policy at issue in *Heavner* contained a provision that excluded an "insured motor vehicle" from the definition of "uninsured motor vehicle." The court ruled Heavner was entitled to collect UM benefits under the policy. It applied the terms of § 3636 in effect at the time and ruled an uninsured vehicle includes one whose insurer was not legally required to pay at least the per-person liability coverage limits applicable to any injured party.

11. *Herren v. Farm Bureau Mut. Ins. Co.*, 2001 OK CIV APP 82, 26 P.3d 120. Joyce Herren and her husband were insured under motor vehicle policies issued in Missouri and Kansas when they were residents of those states. Before the policies became due for renewal the couple moved to Oklahoma where Joyce was in an automobile accident. Under the terms of the Missouri policy, UM coverage was available only if the third-party tortfeasor had no liability coverage or the coverage had limits of less than the minimum required by the financial responsibility laws of the state in which the vehicle is garaged. The Kansas policies provide UM coverage only where the third-party's coverage is less than the UM coverage of the policy. Because of these provisions the insurers denied the Herrens' claims. They urged Oklahoma law should apply to their case. On appeal from the trial judge's summary judgment for the insurers COCA, Div. III, ruled that the law of the foreign states where the policies were issued governed the UM/UIM claims. According to COCA, because Joyce Herren was not insured under any Oklahoma unin-

*Farm Mut. Auto, Ins. Co.*[12] These cases are cited for the proposition that the public-policy exception is not triggered where neither Oklahoma insurance coverage was implicated nor benefit denied under its terms. COCA agreed with this reasoning and declined to follow *Lewis.*[13] It ruled the public-policy exception was not invocable. This was so because (1) proceeds from Billy's Oklahoma

UM coverage were paid to the estate and (2) payment or nonpayment of Charter's UM benefit is independent of the former coverage. The application of Texas law hence violates no Oklahoma public policy.

¶ 9 Bernal further urged Oklahoma has more significant contacts to the subject matter and to the parties than does Texas.[14]

sured motorist coverage, application of the foreign policies' provisions that barred uninsured motorist coverage could not be affected by Oklahoma uninsured motorist coverage in a manner similar to that in *Bohannan*. In short, no Oklahoma public policy found in § 3636 was violated.

The court rejected the Herrens' argument that application of the significant relationship test militated in favor of applying Oklahoma law. The court reiterated *Bohannan's* emphasis that the place of performance and that of contracting were to carry greatest significance in this arena of litigation. It noted (1) the policies were issued to the Herrens when they were residents of foreign states, and (2) the vehicles were at the time of the policies' issuance garaged in those states. Further, the premium rates were presumably set in accordance with the foreign states' laws.

12. *Burgess v. State Farm Mut. Auto., Ins. Co.,* 2003 OK CIV APP 85, 77 P.3d 612. Burgess, a Kansas resident, was injured in Oklahoma while a passenger in a vehicle driven by his daughter, an Oklahoma resident. Burgess had UM coverage under two Kansas policies for $100,000.00 each; he also had first-party UM coverage as a passenger under his daughter's Oklahoma policy. Kansas law disallowed stacking of his policies and permitted UM coverage to be reduced by the amount paid by the tortfeasor. Burgess received $100,000.00 from the tortfeasor's liability policy. His Kansas insurer refused to pay any UM coverage. Because Oklahoma law permits stacking of policies' UM coverage, Burgess urged its law should be applied to his case. On appeal from the trial judge's summary judgment for insurer COCA, Div. I, ruled that Kansas law applied to the controversy. There was no violation of Oklahoma public policy. This was so because although Burgess was insured under the Oklahoma UM coverage issued to his daughter, his Kansas insurer's refusal to stack coverage and its setoff against Oklahoma liability did not deny Burgess any benefits under the Oklahoma policy in a manner contrary to *Bohannan*.

13. In addition to *Bohannan, supra* note 7, COCA's analysis primarily relied on *Herren, supra* note 11, *Burgess, supra* note 12, and *Roby v. Bailey,* 1993 OK CIV APP 93, 856 P.2d 1013. Roby, a resident of Arkansas, was insured under a policy issued there and injured in a collision that occurred in Oklahoma. The other parties' coverage, although meeting Oklahoma's minima, was insufficient to cover Roby's damages. The latter's policy made no provision for an underin-

sured motorist. Arkansas law, unlike that of Oklahoma, distinguishes under- from uninsured coverage. Roby sought UM benefits and urged Oklahoma law should apply to her claim. COCA, Div. I, ruled neither *Bohannan* exception was applicable and the trial court correctly concluded that Arkansas law governed the claim. According to COCA, the fact the accident occurred here was—under *Bohannan*—insufficient to conclude that Oklahoma had the most significant relationship with the subject matter and the parties. Neither did the application of Arkansas law violate Oklahoma's public policy. This was so because (1) the terms of § 3636 do not control insurance contracts issued in foreign states for vehicles not registered or principally garaged in Oklahoma and (2) the application of Arkansas law did not deprive claimant of any benefit to which she was entitled under an Oklahoma law and an existing Oklahoma insurance contract.

14. Bernal cites solely to *Leader National Ins. Co. v. Shaw,* 901 F.Supp. 316 (W.D.Okla.1995), for support of her assertion that Oklahoma has the most significant relationship to the issue and the parties here. *Leader,* an interpleader action, dealt with residents of several states who were in a vehicular accident that occurred in Oklahoma. The precise choice-of-law issue before the United States District Court for the Western District was whether Oklahoma or Kansas law applied. It ruled Oklahoma law governed because that state had greater contacts with the dispute. According to the court, although the policy at issue was sold in Kansas to its residents, these were the sole contacts with that state. The insured was domiciled in Oklahoma and the accident occurred there. The car was financed through an Oklahoma dealer, a majority of claimants were residents of that state, and Oklahoma had a greater interest in the policy proceeds being sought by its residents. Further, the insurer was licensed to sell policies in Oklahoma and should have anticipated that it could be sued in that state and be subject to its laws.

Charter asserts that *Bohannan,* in approving the tenth circuit's rationale in *Rhody v. State Farm Mut. Ins. Co.,* 771 F.2d 1416 (10th Cir. 1985), can be understood to mean the mere fact a claimant resides in Oklahoma and has an accident in Oklahoma does not create an interest sufficient to ignore the contractual bargain made under and paid for in accordance with another state's laws. The court in *Bohannan* did note that application of the Restatement rules would

COCA ruled this second exception-the significant relationship clause-was likewise uninvocable in today's cause. Citing to language found in *Bohannan*, it noted that in first-party UM coverage location of the insured automobile does not rise to greatest significance but rather the place of performance and the place of contracting are to be accorded greatest significance in this choice-of-law area pervaded by state statutes.[15] Hence, the fact that Oklahoma was the place of the accident and Billy was an Oklahoma resident was not sufficient to give Oklahoma the most significant relationship status to the subject matter and to the parties.

¶ 10 Lastly, according to Charter, even if application of the *Bohannan* rule were to reveal Oklahoma's substantive law applies here, the result would be immaterial because the terms of 36 O.S.2001 § 3636[16] do not govern today's cause.[17]

¶ 11 On certiorari, Bernal urges (1) COCA's decision is in conflict with the teachings of *Lewis*, and (2) COCA's analysis under the significant relationship test was insufficient in light of the review required by *Bohannan*.[18]

---

have likely allowed a different outcome in *Rhody*. The tenth circuit there rejected the insurer's contention that the significant relationship test should be adopted. Charter asserts that in *Rhody* there were more numerous ties to Oklahoma than those present in today's cause. Charter also urges *Roby* for support of its position that there are insufficient contacts with Oklahoma to invoke *Bohannan's* most significant relationship exception. *Roby, supra* note 13.

15. *Bohannan, supra* note 7, at ¶ 30, at 797. The court here was referencing Restatement (Second) of Conflict of Laws § 193. That provision, dealing with contracts of fire, surety or casualty insurance, advises:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the terms of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

16. The text of 36 O.S.2001 § 3636(A) in force at the time of Bernal's accident provided:

> "A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state *with respect to a motor vehicle registered or principally garaged in this state* . . . ." (emphasis supplied)

17. COCA did not address Charter's argument that Oklahoma's UM statute, 36 O.S.2001 § 3636(A), by its own terms precludes application of Oklahoma law to its policy. According to Charter, the policy was neither extended nor delivered in Oklahoma. Furthermore, the vehicle was neither registered nor principally garaged here. It did briefly address Bernal's asser-

tion that Oklahoma's UM statute should apply because Charter extended its coverage of the vehicle into Oklahoma when it was driven across the state line. According to COCA, this is actually a conclusion from a choice-of-law analysis. Application of Oklahoma law would be relevant only if the choice-of-law analysis were to indicate that it should be applied.

18. In her supplemental petition Bernal urges Charter's policy, by its terms, applies to "accidents and losses which occur within the policy territory", which the policy defines as "(1) the United States of America, its territories or possessions (2) Puerto Rico; or (3) Canada." Plaintiff's/appellant's supplemental brief, p. 2. The policy hence provides a place of performance. For support of this position Bernal cites to, *inter alia*, *Kemp v. Allstate Ins. Co.*, 183 Mont. 526, 533, 601 P.2d 20, 24. Although she noted the court in *Rhody, supra* note 14, declined to follow this line of reasoning, Bernal urges its consideration here. **Bernal did not press for this interpretation before the trial judge.**

Bernal further asserts that language in *Bohannan* implies—and at least one COCA opinion has interpreted the language to mean—that only Oklahoma statutes may serve as the basis for the public policy exception. Bernal identifies the offensive language in *Bohannan* to be that dealing with the terms of Oklahoma's compulsory liability laws: "These statutes do not prohibit a credit or set off against other coverage for the liability benefits paid." Plaintiff's supplemental brief (citing *Bohannan, supra* note 7, at ¶ 16, at 793). Bernal further cites to *Roby, supra* note 13, at ¶ 8, at 1016, for support of its claim that COCA looks solely to the text of § 3636 in its search for public policy. Plaintiff's supplemental brief, p. 11. The offensive language there, according to Bernal, reveals the public policy exception to be invocable where "application of the other state's law violates a public policy clearly expressed by the *Legislature* ..." (emphasis supplied) *Roby, supra*. Because of our conclusion, we need not address these arguments here.

## IV.

### A.

### OKLAHOMA CHOICE–OF–LAW RULES

■ ¶ 12 The application of choice-of-law rules among the various states continues to evolve.[19] Oklahoma has not been immune to a progression of mutations.[20] The state currently applies different choice-of-law rules to actions that sound in tort from those that sound in contract. While the Restatement's most significant relationship test has been adopted by this court for tort cases,[21] it has not been fully extended to contract questions. This state's established general choice-of-law rule for contract actions is bottomed on the terms of 15 O.S. § 162.[22] According to its provisions, the rule of *lex loci solutionis*—the law where the relevant contract performance occurs—is to be applied.[23] When there is no indication in the contract's text where performance is to occur, the *lex loci contractus* rule—the law of the place where the contract is made—will govern.[24] In *Bohannan*, the court, persuaded by the need for flexibility and analysis of competing state interests in controversies, carved an exception to application of the *lex loci contractus* rule for choice-of-law questions in motor vehicle insurance cases that deal with conflicting state laws.[25] In those instances, the tra-

19. The American Journal of Comparative Law (AJCL) identifies and compiles data regarding the various choice-of-law analyses adopted by the states in both tort and contract actions. Choice-of-law issues in automobile insurance cases are addressed anecdotally but no quantifiable data for these cases are provided. The fifty-two jurisdictions (including the District of Columbia and Puerto Rico) are categorized in accordance with the choice-of-law rule employed by each: traditional, significant contacts, Restatement (Second), interest analysis, *lex fori*, better-law, and combined modern. The most recent methodological count reveals twenty-three (23) jurisdictions apply the Restatement (Second) analysis to choice-of-law issues in contract actions. Five (5) states employ a significant contacts analysis. This category "symbolically stands between the traditional theory and the Restatement (Second) ..." Symeon C. Symeonides, *Choice of Law in the American Courts in 2004: Eighteenth Annual Survey*, 52 Am.J.Comp.L. 919, 943 (Spring 2004). Twelve (12) jurisdictions continue to use the traditional choice-of-law approach, ten (10) are identified as using a combined method and two (2) utilize the better-law approach. Symeon C. Symeonides, *Choice of Law in the American Courts in 2007: Twenty–First Annual Survey*, 56 Am J.Comp.L. 243, 246, n. 5 (Spring 2008).

20. Because of the *Bohannan* decision, previous AJCL surveys identified Oklahoma to be a jurisdiction that follows the Restatement (Second) choice-of-law analysis in contract cases, albeit with a question mark. Following the court's decision in *Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, 164 P.3d 1028, a class action dealing with contract claims, this designation underwent a change. There the court explained its previous variations from the *lex loci contractus* rule were in the unique context of motor vehicle insurance policies and contracts dealing with the sale of goods under the Uniform Commercial Code. *Harvell*, at ¶ 14 at 1033–34. The AJCL has since concluded Oklahoma is a state that follows a traditional approach in its choice-of-law analysis for contract cases. Symeon Symeonides, *Choice of Law in the American Courts in 2006: Twentieth Annual Survey*, 54 Am. J.Comp.L. 697, 710–11 (Fall 2006).

21. In *Brickner v. Gooden*, 1974 Ok 91, 525 P.2d 632, the court abandoned the place-of-injury rule and adopted the "most significant relationship" test for tort actions.

22. The terms of 15 O.S. § 162 provide:

A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

The text of this provision contains two rules. The first part of § 162—the *lex loci solutionis* rule—provides for application of the law where the relevant performance occurs. The latter provision—the *lex loci contractus* rule—provides for application of the law where the contract was made.

23. *Panama Processes, S.A. v. Cities Service Co.*, 1990 OK 66, ¶ 25, 796 P.2d 276, 289.

24. *Panama Processes, supra* note 23, at ¶ 25, at 289.

25. In *Bohannan* the court recognized that in motor vehicle cases neither the *lex loci contractus* nor the *lex loci solutionis* rule allows for full consideration of the statutes and public policies of the several states. It reviewed the applicable choice-of-law rules in the Restatement (Second) and concluded these rules do not give paramount obedience to the statutory directives concerning recovery of uninsured/underinsured motorist coverage. The court hence adopted a new rule to be applicable to conflict-of-laws questions in motor vehicle insurance cases. Adoption of this rule enabled Oklahoma to remain obedient to the statutory directive and yet allow for the consideration of the forum's public policy as well as of

ditional *lex loci contractus* rule governs the validity, interpretation, application and effect of the motor vehicle insurance contracts **except** where (1) the provisions would violate Oklahoma public policy or (2) the facts demonstrate another jurisdiction has the most significant relationship to the subject matter and the parties.

### B.

### OKLAHOMA'S UNINSURED MOTORIST STATUTE PROVIDES A SPECIFIC CHOICE–OF–LAW PROVISION THAT REQUIRES TEXAS LAW'S APPLICATION TO GOVERN TODAY'S CAUSE

■ ¶ 13 The precise and dispositive issue pressed for our review is whether Texas law or that of Oklahoma must govern in this case the terms of the insurance policy issued in Texas. While both parties agree that *Bohannan* controls the choice-of-law decision in UM cases, they disagree about the result of its application to this lawsuit. Although this is a conflict-of-laws problem, analysis of the choice-of-law rule announced in *Bohannan*— applicable to motor insurance cases dealing with conflicting state laws—is not called upon here. **A choice-of-law analysis is unnecessary and may be dispensed with in this case. We are simply unable to decide the Texas insurer's liability by applying Oklahoma law because we are met with an explicit legislative exclusion. The terms of Oklahoma's UM statute, 36 O.S.2001 § 3636,[26] clearly reveal that under its provisions Texas law must govern today's cause.**

¶ 14 The Oklahoma legislature has directed a specific choice-of-law provision to govern under the UM statute. By its own terms,

§ 3636(A) **applies solely** to a policy "issued, delivered, renewed, or extended in this state with respect to a motor vehicle *registered or principally garaged in this state* . . . ." (emphasis supplied)[27] Whenever the legislature commands us to apply the law of another state, we must abide by its directive. The parties do not dispute the automobile in this single-vehicle accident was registered and principally garaged in Shallowater, Texas.[28] **That state's law must hence govern the terms of liability under that state's insurance policy.**

¶ 15 That both Bernal and Charter cite to *Bohannan* for support of their positions reveals the difficulty inherent in choice-of-law analyses. Because the terms of § 3636 were in force when *Bohannan* was decided, and the certified question posed to us there included a conflict-of-laws question dealing with UM insurance coverage, a review of that cause is instructive here.

¶ 16 There the plaintiff, a California resident who was a passenger in a vehicle covered by a policy issued in Oklahoma, was injured in an in-state automobile accident. She was potentially eligible to receive UM benefits under both the Oklahoma policy and her own California coverage. Application of California's non-stacking or set-off statutes governing the terms of plaintiff's California contract reduced the UM coverage she would receive under her policy by the amount of the received Oklahoma UM proceeds. This setoff operated to deny plaintiff the realization of the benefits she was due as an insured under the Oklahoma UM insurance contract for which premiums were paid. It also created for the California insurer an unexpected windfall. The effect of this setoff, according to the court, offended the legislative policy expressed in § 3636.[29] Because this state's

the interests of the conflicting states. *Bohannan, supra* note 7, at ¶¶ 25–30, at 795–97.

A second exception to the *lex loci contractus* rule has been established for those cases that deal with the sale of goods under the Uniform Commercial Code. *Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, 81 P.3d 618.

**26.** For the pertinent terms of 36 O.S.2001 § 3636 see *supra* note 16.

**27.** For the pertinent terms of 36 O.S.2001 § 3636 see *supra* note 16.

**28.** Texas Personal Auto Policy Amended Declarations, see record, tab 3, page 3. Trial court's summary disposition, p 10.

**29.** The terms of 36 O.S.1981 § 3636, in effect at the time of the accident, provided that " 'uninsured motor vehicle coverage shall include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other . . .' and that any payment

public policy was severely impacted, the contract provision became unenforceable in an Oklahoma forum.[30]

¶ 17 The facts in today's case differ from those in *Bohannan*. Here, the UM proceeds from Billy's Oklahoma policy were paid to his estate. That Texas law permits nonpayment of UM benefits under the terms of the Charter policy does not implicate any insurance benefits under an existing Oklahoma policy. *Neither UM benefits contracted and paid for pursuant to Oklahoma law are implicated here nor were any benefits due under our law either denied or diminished.* It is this distinction that brings today's cause strictly within the purview of the § 3636 terms and militates against triggering the public-policy exceptions recognized in *Bohannan*.

¶ 18 By legislative force, the terms of § 3636 do not reach all insurance contracts

enforceable within the state. Its provisions are inapplicable to a policy issued in Texas that insures a vehicle registered and principally garaged in that state. That the difference in result here from that reached in *Bohannan* stems from the manner in which a foreign insurance policy's terms are drafted—a denial of UM benefits under the contract provisions as opposed to a setoff of UM benefits against those provided under other insurance policies—is doubtless of little significance to the decedent's family. But it does and must affect the answer to the question whether Oklahoma's UM statute may be extended to govern today's cause. If the statutory language that limits the applicability of the § 3636 terms is indeed overly restrictive, the change, if needed, must come from Oklahoma's legislature rather than from her court.[31]

made by the insured tortfeasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage." *Bohannan, supra* note 7, at ¶ 12, at 792.

Application of California's nonstacking or setoff law to the provisions of the California policy in order to reduce that contract's UM coverage by the Oklahoma UM coverage denies the plaintiff benefits under the Oklahoma contract for which the premium was paid and allows the insurer an unexpected windfall. This application, according to the court, would offend the legislative policy expressed in § 3636. *Bohannan, supra* note 7, at ¶ 15, at 793.

"The purpose of 36 O.S.1981 § 3636 is to assure each person [of] the full contracted coverage for personal injury damages caused by a financially irresponsible, tortious motorist for each premium paid." *Bohannan, supra* note 7, at ¶ 13, at 792 (citing to *Keel v. MFA Ins. Co.*, 1976 OK 86, at ¶ 10, 553 P.2d 153, 155–156).

*Bohannan* also dealt with a second issue: whether Oklahoma's financial responsibility law, §§ 7–201 et seq. and compulsory liability insurance laws, §§ 7–600 et seq. of Title 47, prohibit a liability benefits credit or setoff against other coverage for the liability benefits paid. The court ruled these statutes do not prohibit a credit or setoff against other coverage. *Bohannan, supra* note 7, at ¶ 16, at 793.

**30.** This analysis of when the *Bohannan* choice-of-law rule stands applicable is supported by that decision's analysis of *Pate v. MFA Mutual*, 1982 OK CIV. APP. 36, 649 P.2d 809, and *Rhody, supra* note 14. The choice-of-law issue in *Pate* addressed the terms of 36 O.S.1981 § 6092—dealing with the prohibition of credit or set-off

provisions against medical payments. The court emphasized that § 6092 was expressly declared by the legislature to be applicable to all insurance contracts effective in Oklahoma. *Bohannan, supra* note 7, at ¶ 18, at 793. It noted the prohibition against payment satisfaction by setoff or credit in § 3636 is a limitation on insurance contracts issued in this state. *Bohannan, supra* note 7, at ¶ 16, at 793.

The conflict in *Rhody* dealt with opposing state views on "stacking" of UM coverage. Although the accident occurred in Oklahoma, the insurance policy involved was issued in Texas. The tenth circuit's decision rejected the insured's argument that the *lex loci contractus* is outmoded as a conflict-of-laws rule, urging instead adoption of the most significant relationship test. The court there found no trend in favor of the significant relationship test. It applied the *lex loci contractus* rule and held Texas law governed the claim. In *Bohannan* the court noted *Rhody* did not deal with an Oklahoma statute wherein the legislature expressly reached all insurance contracts effective within the state, without regard to the extra-jurisdictional issuance of the insurance contract. *Bohannan, supra* note 7, at ¶ 18, at 794. It further noted the application of Texas law did not deny UM insurance benefits contracted and paid for in accordance with Oklahoma law. *Bohannan, supra* note 7, at ¶ 23, at 795.

**31.** The Arizona legislature undertook to amend the terms of its under- and uninsured motorist statute that limited its application to policies delivered or issued in Arizona for vehicles registered or principally garaged in Arizona. *See Beckler v. State Farm Mutual Automobile Ins. Co.*, 195 Ariz. 282, 987 P.2d 768 (1999).

## V.

### SUMMARY

¶ 19 Oklahoma's statutory law provides a choice-of-law provision for the terms of her uninsured motorist statute, 36 O.S.2001 § 3636. Its terms regulate insurance policies "issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state . . . ." The vehicle in today's cause was registered and principally garaged in Texas. That state's law must hence govern the liability incurred under insurance policy provisions tendered in this suit. To the extent that the opinion in *Lewis, supra* note 10, may appear inconsistent with today's pronouncement, it is expressly disapproved.

¶ 20 The Court of Civil Appeals' opinion is vacated and the trial court's summary disposition affirmed.

¶ 21 ALL JUSTICES CONCUR.