2010 OK CIV APP 12

In re FARMERS MED–
PAY LITIGATION.

Ladonna Houck, Roberta Oliver, and Tasha Sherman–Harris, Individually and as Representatives of All Other Similarly Situated Insureds, Plaintiffs/Appellees,

v.

Farmers Insurance Company, Inc.; Farmers Group, Inc.; Farmers Insurance Exchange; Mid–Century Insurance Company; Truck Insurance Exchange; and Fire Insurance Exchange, Defendants/Appellants,

and

Zurich Services Corporation, Defendant.

No. 105,295.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Oct. 20, 2009.

Certiorari Denied Jan. 25, 2010.

Robert W. Nelson, Derrick L. Morton, Nelson, Roselius, Terry, O'Hara & Morton, Rick W. Bisher, Ryan Bisher Ryan, Bryce Johnson, Johnson & Carson, Paul M. Kolker, Pignato & Cooper, P.C., Jeff F. Laird, Foshee & Yaffe, Oklahoma City, OK, Gregg R. Renegar, Kornfeld, Franklin, Renegar & Randall, Edmond, OK, for Plaintiffs/Appellees.

Richard C. Ford, Brooke S. Murphy, Rustin J. Strubhar, Crowe & Dunlevy, Oklahoma City, OK, for Defendants/Appellants.

DOUG GABBARD II, Presiding Judge.

¶1 Defendants, Farmers Insurance Company and related entities (collectively, Farmers), appeal the trial court's certification of this case as a class action. We affirm.

## FACTS

¶2 Plaintiffs, Ladonna Houck, Roberta Oliver, and Tasha Sherman–Harris, are insurance policyholders of Farmers. Their policies all contain identical clauses providing what is known as no-fault "med-pay" coverage. These clauses provide that where an insured suffers bodily injury in an accident, Farmers will pay reasonable expenses for necessary medical services furnished within two years of the accident. The policies define "reasonable expenses" as "expenses which are usual and customary for necessary medical services in the county in which those services are provided." Each of the Plaintiffs sustained injuries arising from accidents covered by the policies, each submitted bills for necessary medical services furnished within two years of her accident, and each had bills denied by Farmers, in whole or in part, as "unreasonable."

¶3 At issue is the manner in which Farmers processed, reviewed, and denied Plaintiffs' med-pay claims. Beginning in late 2000, Farmers entered into a Managed Care Services Agreement to have all such claims reviewed by Zurich Services Corporation (ZSC), a claims management company owned by Farmers. ZSC maintains a large computerized database of charges billed by medical providers within federally established medical service areas called PSROs (Professional Standards Review Organization). ZSC compares each incoming Farmers' policyholder's medical bill against the database, and "flags" a charge as potentially unreasonable whenever it exceeds the 80th percentile of all charges in the database for the relevant PSRO service. According to Farmers, ZSC then individually reviews the flagged charge and, in some cases, finds it unreasonable, assigns it an "RC40 code," and notifies the

medical provider or policyholder that it is reducing or denying payment. Farmers asserts this process identifies inappropriate or excessive medical charges, and benefits policyholders because the provider usually accepts the reduction as full payment, leaving the policyholder with more room before reaching his or her "cap" on coverage.

¶ 4 However, Plaintiffs filed suit alleging that Farmers systematically uses the ZSC 80th percentile audit/review process to wrongfully deny payment/reimbursement of policyholders' medical expenses in a predetermined manner, regardless of whether an expense is or is not unreasonable, primarily to reduce Farmers' costs. Although Plaintiffs have alleged causes of action for bad faith, unjust enrichment, fraud or deceit, and conspiracy to commit a tortious act,[1] they only seek class certification for their breach of contract claims.

¶ 5 After a hearing, the trial court entered a 30–page order which extensively analyzed the case pursuant to the prerequisites of 12 O.S.2001 § 2023, found that each prerequisite was met, and granted class certification with a class composed of:

All persons who made a covered claim pursuant to the Medical Payments Coverage of a private passenger automobile insurance policy written by [Farmers] where:

1. This is the description given by the Oklahoma Supreme Court in Appeal No. 100,829, wherein the Court appointed Judge Edward Cunningham as coordinating judge to preside over the individual "Farmers Med–Pay Litigation" cases.

2. These are the states in which Farmers wrote policies with the identical med-pay language at issue.

3. This appeal is authorized by 12 O.S.2001 § 993(A)(6). We have captioned our Opinion in accordance with the trial court's order, but have included the names of the parties pursuant to Sup.Ct. R. 1.25.

4. Title 12 O.S.2001 § 2023 states, in relevant part:

A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

A. Zurich Services Corporation ("ZSC") was utilized to review medical expenses;

B. Farmers applied ZSC's RC 40 reduction to the medical expenses; and

C. The insurance policy was written in one of the following states:

1. Alabama;
2. California;
3. Idaho;
4. Illinois;
5. Indiana;
6. Iowa;
7. Montana;
8. Nebraska;
9. Nevada;
10. New Mexico;
11. Ohio;
12. Oklahoma;
13. South Dakota; and/or
14. Wyoming.[2]

¶ 6 Farmers now seeks interlocutory review of this order.[3]

## STANDARD OF REVIEW

¶ 7 A trial court's class certification order is reviewed for abuse of discretion. *Shores v. First City Bank Corp.*, 1984 OK 67, ¶ 4, 689 P.2d 299, 301. An abuse of discretion occurs if the record fails to support the conclusion that each of the prerequisites set forth in 12 O.S.2001 § 2023 have been met.[4]

1. The class is so numerous that joinder of all members is impracticable;
2. There are questions of law or fact common to that class;
3. The claims or defenses of the representative parties are typical of the claims or defenses of the class;
4. The representative parties will fairly and adequately protect the interests of the class.

B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

. . .

2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is

*Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, ¶ 5, 81 P.3d 618, 623 (*cert. den.*, 542 U.S. 937, 124 S.Ct. 2907, 159 L.Ed.2d 812 (2004)); *Harvell v. Goodyear Tire and Rubber Co.*, 2006 OK 24, 164 P.3d 1028.

¶ 8 Section 2023(A) sets forth four requirements for maintaining a class action: numerosity of the class; commonality of the questions of law or fact; typicality of the class representatives' claims; and ability of the class representatives to fairly and adequately protect the interests of the class. Section 2023(B) provides that class members seeking certification must meet one of three additional requirements. In this case, Plaintiffs assert that there is a predominance of common questions of law or fact over individual questions, pursuant to § 2023(B)(3).

¶ 9 "To resolve whether the prerequisites for class-certification are met, we need not reach the merits of the claim." *Harvell* at ¶ 11, 164 P.3d at 1032. However, in order to determine whether the trial court applied the correct legal standards in assessing the § 2023 requirements, we must identify and review the *core liability issues* asserted by the class. *Id.*, 164 P.3d at 1032–33.

## ANALYSIS

### 1. Numerosity

¶ 10 Numerosity occurs when "[t]he class is so numerous that joinder of all members is impracticable." 12 O.S.2001 § 2023(A)(1). This requirement is satisfied by numbers alone where the size of the class is in the hundreds. *Black Hawk Oil Co. v. Exxon Corp.*, 1998 OK 70, 969 P.2d 337.

¶ 11 Here, the trial court found a sufficient number of potential class members to meet this requirement, noting that, in Oklahoma alone, thousands of claims were adjusted annually using the 80th percentile method. Farmers does not dispute this finding.

superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,
b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,

### 2. Commonality

¶ 12 Commonality requires that there be questions of law or fact common to the class members. 12 O.S.2001 § 2023(A)(2). As a general rule, where a lawsuit challenges a practice or policy affecting all putative class members, individual factual differences among the individual litigants will not preclude a finding of commonality. *Ysbrand*, 2003 OK 17 at ¶ 21, 81 P.3d at 627.

¶ 13 Plaintiffs allege that all class members had similar Farmers' policies with identical med-pay provisions, that Farmers denied payment of necessary medical charges for covered injuries using a predetermined computerized audit/review process primarily to reduce Farmers' costs, and that Farmers' actions were in violation of its policy terms. Clearly, commonality was present.

### 3. Typicality

¶ 14 Typicality is satisfied " '[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented ... irrespective of varying fact patterns which underlie individual claims.' " *Ammons v. Am. Family Mut. Ins. Co.*, 897 P.2d 860, 863 (Colo.Ct.App.1995)(quoting 1 H. Newberg, *Newberg on Class Actions* § 3–13 at 3–77 (3d ed.1992)).

¶ 15 In this case, the court found that the class representatives' claims were typical of the class since each class member was insured by Farmers under a policy with identical med-pay language, each sustained injury in an automobile accident covered by the policy, each submitted medical bills for necessary treatment, each had bills for such services reduced or denied by Farmers after a ZSC audit/review, and each claimed that

c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and
d. the difficulties likely to be encountered in the management of a class action.

this denial was arbitrary and a breach of their insurance contract. Clearly, "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented," as required for a finding of typicality.

¶ 16 Nevertheless, Farmers asserts that none of the Plaintiffs' claims are typical, because Farmers denied payment of individual medical bills as not "reasonable" for a wide variety of reasons, thereby necessitating an individual inquiry into each claim. In *Burgess v. Farmers Insurance Co., Inc.*, 2006 OK 66, ¶¶ 14, 17, 151 P.3d .92; 99–100, 101, the Oklahoma Supreme Court rejected a similar argument by Farmers, stating:

> Insurer would have us reject class certification on the basis of a determination regarding the veracity of its defense on the merits-that Insurer in fact did not operate pursuant to an across-the-board pattern of underpayment of claims, but rather, made individual assessments as to the propriety of O & P payments on every claim. We express no opinion on the merits and our determination on class certification should not be taken as any indication of how a jury might properly decide these fact questions. . . .
>
> Here, the acts or omissions of Insurer which constitute the alleged breaches of contract, bad faith and/or fraud . . . are the same or similar acts or omissions for each class member.

### 4. Adequacy of representation

■ ¶ 17 Adequacy of representation is satisfied when "[t]he representative parties will fairly and adequately protect the interests of the class." 12 O.S.2001 § 2023(A)(4). Farmers asserts that Plaintiffs cannot adequately represent the class due to "internal conflicts" among class members, because some providers accepted the reduced amounts paid by Farmers as full payment, thus lowering some insureds' medical bills and creating more "cap" room for their other medical expenses. We disagree.

¶ 18 The fact that a class representative has not personally incurred all the damages suffered by other class members does not necessarily preclude the representative's ability to adequately represent the class. Even a potential conflict between the representatives and some class members does not preclude the use of a class action if the parties appear to be united in interest against the defendant. 7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure Civil*, 3rd ed., § 1768 (2009).[5] Plaintiffs are so united.

### 5. Predominance

■ ¶ 19 Predominance involves two components. The court must find that: 1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members"; and 2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." 12 O.S.2001 § 2023(B)(3). The determination of predominance is a "qualitative rather than quantitative" matter, because the weight of resolving certain issues may outweigh their number. *Mattoon v. City of Norman*, 1981 OK 92, ¶ 18, 633 P.2d 735, 739. Generally, "in determining whether the predominance standard is met, a court focuses on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." 59 Am.Jur.2d *Parties* § 87 (2002).

### A. Common Issues of Fact and Law Predominate

■ ¶ 20 The trial court found evidence that Farmers had essentially abandoned an individualized approach to assessment of med-pay claims,[6] that common issues predominated, and that while there were variances among the states regarding different legal issues, there was no variance regarding the core liability issues, i.e., the interpretation of the med-pay provision and whether

---

5. Moreover, if certain insureds in the class decide they were benefitted by Farmers' conduct, the class action statute allows them to opt out of the lawsuit. 12 O.S.2001 § 2023(C).

6. The trial court erred in making this particular finding because it constitutes a improper determination of the merits.

Farmers' actions constitute a breach thereof. On this issue, Farmers asserts the trial court erred for three reasons.

¶ 21 *First,* as noted above, Farmers asserts that common factual issues do not predominate because it denied every medical charge as unreasonable for a different reason, and, therefore, each Plaintiff's claim will involve an inquiry into each of those reasons. We disagree. As we noted earlier in our discussion of the typicality requirement, all Plaintiffs and putative class members assert the same claim and will use similar proof. Farmers would have us reject class certification on the basis of a determination regarding the veracity of its defense on the merits. This is an argument that the Supreme Court rejected in *Burgess,* 2006 OK 66 at ¶ 1, 151 P.3d at 94. In *Black Hawk,* 1998 OK 70, 969 P.2d 337, the Oklahoma Supreme Court adopted the rule of *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), holding that it is usually inappropriate to inquire into the merits of a class action dispute in deciding whether a class should be certified. Moreover, "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Ysbrand,* 2003 OK 17 at ¶ 21, 81 P.3d at 627.

¶ 22 *Second,* Farmers asserts that common legal issues do not predominate because the laws of 14 different states must be applied. For this argument, it relies upon *Harvell v. Goodyear Tire and Rubber Co.,* 2006 OK 24, 164 P.3d 1028.

¶ 23 In *Harvell,* the plaintiff filed a class action lawsuit against Goodyear Tire and Rubber Co., seeking certification of a national class action of consumers from 37 states who had paid Goodyear a "shop supply fee" since 1998. The plaintiff alleged that Good-

year set the fee at 7 percent of the labor charge with a maximum of $20, regardless of whether shop supplies were used. Although Goodyear initiated the policy, the individual stores purchased their own supplies, and the brand, supplier, and cost of the supplies varied from store to store. On appeal from a certification order, the Supreme Court reaffirmed that Oklahoma applies the doctrine of *lex loci contractus,* codified at 15 O.S.2001 § 162, to resolve conflict of law questions in contract cases.[7] The Court also noted that, under this choice of law rule, the provisions of a motor vehicle insurance contract are determined by the laws of the state where the contract was made unless: (1) the provisions of the contract are contrary to Oklahoma public policy, or (2) the facts demonstrate that another jurisdiction has the most significant relationship with the subject matter and the parties.[8] *Id.* at ¶ 14 and n. 23, 164 P.3d at 1034.

¶ 24 In the present case, it appears that the policy was made in Kansas and that Kansas law applies. The Declarations Page of the Farmers' policy states: "The policy shall not be effective unless countersigned on the Declarations Page by a duly authorized representative of the Company named on the Declarations Page." The page contains a signature of an "authorized representative" which is different than the named Farmers' agent, and also indicates that the policy was issued out of Shawnee Mission, Kansas. Accordingly, we find that this policy was made in Kansas, and that Kansas law applies. Therefore, Farmers' argument that the law of 14 states applies is not supported by the record.

¶ 25 Even if this were not true as to the policies of all putative class members, we would reach the same result. In *Harvell,* the Supreme Court denied certification because

---

7. Title 15 O.S.2001 § 162 provides: "A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."

8. This rule was first applied to insurance contracts in *Bohannan v. Allstate Ins. Co.,* 1991 OK 64, 820 P.2d 787; *see also Bernal v. Charter*

*County Mut. Ins. Co.,* 2009 OK 28, 209 P.3d 309. However, the Supreme Court has continued to apply the most significant relationship test to class actions that include breach of warranty theories. *See Cuesta v. Ford Motor Co.,* 2009 OK 24, 209 P.3d 278, and *Masquat v. DaimlerChrysler Corp.,* 2008 OK 67, 195 P.3d 48. However, neither exception appears to apply in this case.

each class member had a different contract with each service center and "[t]hese individualized determinations, coupled with the application of the law of 37 states, precludes a finding of predominance and defeats the purpose of certifying a class." *Id.* at ¶ 16. Here, on the other hand, each putative class member has a policy with identical med-pay language, each class member will claim that Farmers breached the policy provision for the same reasons, and all 14 states with putative class members apply essentially the same legal rules on these core liability issues.[9] This latter conclusion is not surpris-

9. Oklahoma law provides that contracts be "interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." 12 O.S.2001 § 152. In ascertaining such intent, we must look only to the language of the contract, if the language is clear and explicit and does not involve an absurdity. 15 O.S.2001 § 154. In order to prove a breach of contract, a plaintiff must prove three elements: 1) the formation of a contract; 2) a breach thereof; and 3) actual damages suffered from that breach. *Digital Design Group, Inc. v. Information Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843.

The other 13 states involved in the present litigation have similar requirements for interpreting contracts and proving breach thereof: *See Woodmen of the World Life Ins. Soc'y v. Harris*, 740 So.2d 362, 368 (Ala.1999)("Contract interpretation is guided by the intent of the parties, which, absent ambiguity, is evidenced by the plain language of the contract."); *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105–06 (Ala. 2002)(the elements of a breach of contract action are a valid binding contract, plaintiff's performance thereof, defendant's non-performance, and resulting damages); *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 76 Cal. Rptr.3d 585, 601 (2008)(contracts must be interpreted by giving effect to the mutual intent of the parties as it existed at the time the contract was entered into); *McKell v. Wash. Mut., Inc.*, 142 Cal.App.4th 1457, 49 Cal.Rptr.3d 227, 254 (2006)(the elements of breach of contract are the existence of a valid contract, plaintiff's performance or excuse for nonperformance, defendant's breach, and resulting damage to plaintiff); *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 75 P.3d 743, 746 (2003)(when the language in a contract is clear and unambiguous, its interpretation is a question of law and the language will be given its plain meaning as intended by the contracting parties at the time the contract was entered); *Johnson v. McPhee*, 147 Idaho 455, 210 P.3d 563 (Ct.App.2009)(a breach of contract requires the existence of a binding contract and damages); *Nicor, Inc. v. Assoc. Elec. and Gas Ins. Servs.*, 223 Ill.2d 407, 307 Ill.Dec. 626, 860 N.E.2d 280, 286 (2006)(when interpreting an insurance policy or other contract, the primary goal is to give effect to the intent of the parties as expressed in the agreement); *Village of South Elgin v. Waste Mgmt. of Ill., Inc.*, 348 Ill.App.3d 929, 284 Ill. Dec. 868, 810 N.E.2d 658, 669 (2004)(elements of a breach of contract are an offer and acceptance, consideration, definite and certain terms, performance by the plaintiff of all required conditions, breach, and damages); *Merrill v. Knauf*

*Fiber Glass GmbH*, 771 N.E.2d 1258, 1268 (Ind.Ct.App.2002)(contracts are interpreted by ascertaining intent of parties at the time the contract was executed as disclosed by the language used to express their rights and duties); *Gatto v. St. Richard Sch., Inc.*, 774 N.E.2d 914, 920 (Ind.Ct.App.2002)(elements of breach of contract are the existence of a contract, the defendant's breach thereof, and damages); *Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001)(the cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract); *Berryhill v. Hatt*, 428 N.W.2d 647 (Iowa 1988)(the elements of breach of contract are the existence of a contract, the terms and conditions thereof, the plaintiff has performed all the terms and conditions required of him and now requires the defendant to perform, the contract was breached by the defendant in some way, and the plaintiff has suffered damages); *Watson v. Dundas*, 332 Mont. 164, 136 P.3d 973, 977–78 (2006)(when interpreting a contract, the ultimate objective is to "ascertain the paramount and guiding intent of the parties" as it existed at the time of contracting and to give effect to that mutual intent); *Cut Bank School Dist. No. 15 v. Rummel*, 312 Mont. 143, 58 P.3d 159 (2002)(a breach of contract requires the element of damages proximately caused by the breach, and the damages must be proven with a reasonable degree of certainty); *Davis v. Nev. Nat'l Bank*, 103 Nev. 220, 737 P.2d 503, 505 (1987) (in interpreting a contract "the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself"); *Clark County School Dist. v. Richardson Const., Inc.*, 123 Nev. 382, 168 P.3d 87 (2007) (causation is an essential element of a claim for breach of contract, and, if the damage which the promisee seeks would not have been avoided by the promisor's not breaking his promise, then the breach cannot give rise to damages); *Coral Prod. Corp. v. Central Res., Inc.*, 273 Neb. 379, 730 N.W.2d 357, 369 (2007) (the court's primary duty in interpreting a contract is to ascertain the true intent of the parties); *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749, 754 (1995) (elements of breach of contract are the existence of a contract and its terms, plaintiff's compliance therewith, defendant's breach, and damages); *Medina v. Sunstate Realty, Inc.*, 119 N.M. 136, 889 P.2d 171, 173 (1995) (contracts are to be interpreted "to give force and effect to the intent of the parties"); *Exum v. Ferguson*, 97 N.M. 122, 637 P.2d 553, 554 (1981) (an injured party is "entitled to all damages that flow as a

ing since the general policies regarding contract interpretation and the elements of breach have tended to be uniform from state to state. *See Collins v. Int'l Dairy Queen, Inc.*, 168 F.R.D. 668, 676 (M.D.Ga.1996); *see also Harvell*, 2006 OK 24 at ¶ 15, 164 P.3d at 1034.

¶ 26 Farmers correctly observes that there are other relevant legal issues on which state laws differ. Specifically, it notes the states have differing laws on statutes of limitation,[10] the ability to bifurcate contract claims from bad faith claims, the enforceability of arbitration provisions, the availability and measurement of damages (including non-economic and punitive damages), and the availability of attorney fees.[11] However, these legal differences do not relate to core liability issues and, therefore, do not necessarily prohibit class certification; rather, they bear upon whether the class is manageable and whether certification is a qualitatively superior means of adjudication.

¶ 27 The Oklahoma Supreme Court has held that mere differences in limitations periods is usually not an impediment to class certification. *Shores v. First City Bank Corp.*, 1984 OK 67, ¶ 16, 689 P.2d 299, 304. Likewise, while the states also disagree with respect to the calculation of damages and the

enforcement of arbitration provisions, the trial court may address these issues by creating subclasses, as suggested in *Cuesta v. Ford Motor Co.*, 2009 OK 24, ¶ 19, 209 P.3d 278, 285–86. Finally, differences regarding the bifurcation of contract and bad faith claims do not impact class certification since putative class members may opt out if that is an issue.

¶ 28 As noted above, the Court in *Harvell* held that the "individualized determinations, coupled with the application of the law of 37 states, precludes a finding of predominance and defeats the purpose of certifying a class." 2006 OK 24 at ¶ 16, 164 P.3d at 1034. In contrast, the present case presents no individualized factual determinations, the laws applicable to the core liability issues of the case are identical in the 14 states with putative class members, and the remaining legal issues may be dealt with by the creation of subclasses. We note that the trial court clearly believed that the class and issues presented were manageable, and we are unable to conclude that its decision was flawed.[12] We find *Harvell* distinguishable on the facts, and we reject Farmers' argument on this issue.[13]

¶ 29 We also reject Farmers' related due process argument, that Oklahoma may not

natural and probable consequence from a breach" of contract); *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374, 374 (1974) (contracts should "be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language"); *Lawrence v. Lorain Cty. Comm. College*, 127 Ohio App.3d 546, 713 N.E.2d 478, 480 (1998) (the elements of breach of contract are the existence of a contract, the plaintiff fulfilled his or her contractual obligations, the opposing party failed to fulfill his or her contractual obligations, and the plaintiff incurred damages as a result thereof); *Frost v. Williams*, 2 S.D. 457, 50 N.W. 964 (1892) (a contract should be interpreted to give effect to the parties' common intent at the time of its making); *Guthmiller v. Deloitte & Touche LLP*, 699 N.W.2d 493, 498 (S.D.2005) (the elements of breach of contract are an enforceable promise, a breach of the promise, and resulting damages); *Gilstrap v. June Eisele Warren Trust*, 106 P.3d 858, 862 (Wyo.2005) (determining the parties' intent is the court's prime focus in interpreting or construing a contract); *Reynolds v. Tice*, 595 P.2d 1318, 1323 (Wyo.1979) (the elements of breach of contract are a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised

therein, and entitlement of injured party to damages).

10. According to Farmers, the 13 states other than Oklahoma have applicable limitations periods ranging from four to fifteen years. Farmers' Brief in Chief, p. 13.

11. These differences are thoroughly discussed in Farmers' Brief in Chief, pages 13 & 14.

12. Furthermore, if the trial court later determines that its certification order should be modified, it has the power to do so.

13. Plaintiffs request that we apply the doctrine of false conflict to this case. Generally, where the laws of two or more jurisdictions would produce the same result as to the particular issue presented, there is a *false conflict*, and the court should avoid the choice of law question. *Williams v. Stone*, 109 F.3d 890, 893 (3rd Cir.1997). In those cases, the presumptive local law is applied. *Seizer v. Sessions*, 132 Wash.2d 642, 940 P.2d 261 (1997). However, we find application of such a doctrine inconsistent with Oklahoma's choice of law rule.

apply its own law to insureds in other states who have no relationship with Oklahoma. The trial court did not decide that Oklahoma laws applied over those of the other 13 jurisdictions. It merely found that class certification should be granted because the legal rules applicable to the core issues were identical, and the legal issues which did vary from state to state (those related to limitations, damages, arbitration, etc.) could be addressed by the use of subclasses. Taken to its extreme, Farmers' argument would severely limit our own class action statute and eliminate multi-state class actions.

¶ 30 *Third,* Farmers asserts that common issues cannot predominate since many class members have never experienced any damage and have no basis for a claim. Farmers notes that actual damage is a required element in proving a breach of contract action. *Digital Design Group, Inc. v. Information Builders, Inc.,* 2001 OK 21, ¶ 33, 24 P.3d 834, 843.

¶ 31 As we have previously noted, it is inappropriate to inquire into the merits of a class action dispute in deciding whether a class should be certified. Furthermore, [f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Ysbrand,* 2003 OK 17 at ¶ 21, 81 P.3d at 627. In this case, the core liability issues of all class claims have common questions of fact and law which predominate over questions affecting individual members.

### B. A Class Action is Superior to Other Methods of Adjudication

¶ 32 Having found that common factual and legal issues related to the core liability issue predominate, we must still determine whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. 12 O.S.2001 § 2023(B)(3). Here, the trial court found that each claim was small and costly to litigate individually, and such litigation would be unduly burdensome to the courts. The record supports that finding.

¶ 33 Nevertheless, Farmers asserts that a class action is not superior to individual claims because Plaintiffs and putative class members have filed additional claims that are not part of the present class action and there will still be "hundreds of thousands" of trials. Even if this were true, a class action may dispose of at least one claim common to all the parties in a more consistent and efficient manner. This is precisely why 12 O.S.2001 § 2023(C)(4)(a) approves of class actions for particular claims. Requiring a class action to dispose of all claims between the parties would render the language of § 2023(C)(4)(a) meaningless. This argument fails.

¶ 34 Having considered all the facts and circumstances, we find that the core issues of the case present common factual and legal questions, and also find that a class action is superior to other forms of adjudication. Thus, predominance exists.

### CONCLUSION

¶ 35 Because each of the § 2023 prerequisites exist, we conclude that the trial court did not abuse its discretion. Accordingly, the class certification order is affirmed.

¶ 36 AFFIRMED.

FISCHER, J., and GOODMAN, J., sitting by designation, concur.