Peter M. WILSON, Appellee,

v.

The TRAVELERS INSURANCE COMPANY, a corporation, Appellant.

No. 51229.

Supreme Court of Oklahoma.

Jan. 22, 1980.

Fenton, Fenton, Smith, Reneau & Moon by Donald R. Wilson, Oklahoma City, for appellee.

Monnet, Hayes, Bullis, Thompson & Edwards by Ronald L. Howland, Oklahoma City, for appellant.

---

HODGES, Justice.

This appeal involves the refusal of The Travelers Insurance Company [Travelers], appellant, to pay for laetrile treatments to Helen Wilson, the appellee's wife.

Helen Wilson was diagnosed as having incurable lung cancer in July of 1976. She began cobalt therapy, a medically recognized cancer treatment. On August 9, 1976, she and her husband intervened in the case of *Rutherford v. United States*, Case No. 75–0218–B in the United States District Court for the Western District of Oklahoma, seeking an order enjoining the Food and Drug Administration [FDA] from any attempt to prevent her from obtaining laetrile for her personal use. The court issued an order August 12, 1976, prohibiting any administrative or criminal action against her, the attending physician, or any hospital using laetrile for her treatment. Laetrile treatments were received by the patient, and insurance claims were submitted under the Travelers' policy. Although the company paid all other covered medical expenses under the policy, it refused to pay for laetrile treatments. The insured initiated suit to recover on the policy. Subsequently, both parties filed motions for summary judgment and the insured's motion was sustained.

After the appeal of this case to this Court, and the submission of briefs by both parties, the United States Supreme Court reversed *United States v. Rutherford*, 442 U.S. 544, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979) and determined that the Fair Food and Drug Act [Act] prohibited the interstate distribution of laetrile without exception for terminally ill patients.

Travelers asserts it was not required to pay for laetrile treatments under the terms of the policy [1] because (1) the policy provided that it should be interpreted in accordance with the laws of the District of Columbia [2] where laetrile is illegal, and (2) the policy should not be construed as providing coverage for treatment which is illegal.

The District of Columbia Code, 49 D.C. Code § 49–301 (1967) provides that the Acts of Congress contained in the United States Code are, in effect, the laws of the District. It is argued by Travelers that because 21 U.S.C. § 355(a) of the Fair Food and Drug Act prohibits the introduction of any new drug into interstate commerce unless an application is filed with the FDA showing that the new drug is safe and effective, the Act is determinative of the issue because it was illegal to distribute laetrile in interstate commerce. We do not agree. Assuming arguendo, that the contract should be interpreted in accordance with the laws of the District of Columbia, Travelers ignores the fact that all treatment and medication occurred in Oklahoma under the specific authority of an order of the United States District Court.

Drug is defined by 21 U.S.C. § 321(g)(1)(B) as including articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals. The intended use determines whether even the most commonly ingested foods and liquids are drugs within the meaning of the Act.[3] It is undeniable that laetrile is a drug under the Act.[4]

The policy provided that charges made for any drugs and medicines obtained upon the prescription of a licensed physician were covered expenses. In order to establish the right to receive payment for treatment under the terms of the policy, the insured was required to establish that the claim was for reasonable charges made by a licensed phy-

---

1. The insurance policy provided that:
   "This policy contract has been executed and delivered in the District of Columbia, and shall be interpreted and applied according to the laws of the District of Columbia."

2. See Annot., "Validity and Effect of Choice-of-Law Provision in Group Insurance Policy," 53 A.L.R.3d 1077 (1972) for a discussion of cases reflecting both sides of the issue.

3. *Gadler v. United States*, 425 F.Supp. 244, 246 (3rd Div. D.Minn.1977).

4. In *Kordel v. United States*, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52 (1948), the United States Supreme Court determined that a combination of vitamins, minerals, and herbs constituted a drug within the purview of the Act.

sician.[5] The attending physician's affidavit established these facts.[6]

■ The general statutory construction of contracts is dispositive of the issue. Insurance contracts are contracts of adhesion, and where the contract is susceptible of two constructions, the construction most favorable to the insured must be adopted.[7] Standardized or printed contracts are interpreted most strongly against the party preparing the form.[8] The rule of strict construction against the drafter of the instrument is particularly applicable in the case of a contract drawn by an expert or experienced party.[9] The contract could have precluded payment for illegal drugs, experimental drugs, or provided that all drugs must have been declared safe and effective by the FDA before they would be covered expenses under the contract. It did not do so.

■ All treatment with laetrile occurred under a court order, and the authorized treatment during the pendency of the appeal was not an illegal act. The patient was terminally ill. She could not afford to wait to see if the appeal would be affirmed or if she would be prohibited by the appellate courts from securing treatment under what she must have felt was the last chance available to her.

Undoubtedly, the district court would have reached a different result had the

5. The policy provided in pertinent part:
"Covered Expenses—The term 'covered expenses' means only such of the following expenses as are reasonable and are incurred by an employee on account of himself while he is an eligible employee or on account of an eligible dependent for the therapeutic treatment of any bodily injury or sickness of such person, and then only to the extent not hereinafter excluded:
(1) Charges made by a Hospital, in its own behalf for services and supplies required by and rendered to the Employee or Dependent during his Hospital confinement in direct connection with the therapeutic treatment of such person; except that (i) the amount of daily room and board charges which shall be considered as covered expenses shall in no event exceed the Hospital's average daily rate for semi-private accommodations, and (ii) charges in excess of the cost of semi-private accommodations for private room accommodations for which benefits provided under Medicare are limited to the cost of semi-private accommodations shall not be considered as covered expenses;
(2) Charges made by a licensed physician for professional services rendered to the Employee or Dependent by the physician;
(3) Charges made by a trained nurse (other than one who ordinarily resides in the Employee's home or who is a member of the immediate family—comprising the Employee, the Employee's wife or husband, and the children, brothers, sisters, and parents of either the Employee or the Employee's wife or husband) for professional services rendered to the Employee or Dependent;
(4) Charges made for any of the following services and supplies, to the extent such charges do not duplicate charges included under terms (1), (2) and (3) above;
(a) drugs and medicines obtained upon the prescription of a licensed physician;"

6. The affidavit of the physician states in pertinent part:
"I am a physician licensed to practice medicine by the State of Oklahoma. I have been treating Helen B. Wilson for lung cancer since August 1976. Pursuant to the Court order obtained from the United States District Court for the Western District of Oklahoma, my treatment of Mrs. Wilson has included the administration of amygdalin (Laetrile) in addition to other accepted cancer treatment such as cobalt therapy. The Wilsons have obtained the medicine Laetrile upon my prescription for the administration of the substance. Since beginning her treatment in August 1976, Mrs. Wilson has been under my supervision and I have prescribed and administered her treatment to include administration of amygdalin (Laetrile). The sole purpose of all her treatments has been to provide therapeutic treatment to her cancer condition. I have reviewed the charges made for the medicine and the administration and supervision of the amygdalin (Laetrile) treatment and in my opinion they are reasonable.
"All charges made for the administration of the Amygdalin were for the services of a licensed physician or a trained nurse in my office."

7. *Wilson v. Mid-Continent Life Ins. Co.*, 159 Okl. 191, 14 P.2d 945, 84 A.L.R. 386 (1932).

8. See *Harjo Gravel Co. v. Luke-Dick Co.*, 194 Okl. 537, 153 P.2d 112 (1944). The Oklahoma Statute, 15 O.S.1971 § 170 has been so interpreted because the person who has the contract drawn is responsible for the attending ambiguity.

9. *Continental Fed. Sav. & Loan Ass'n v. Fetter* 564 P.2d 1013, 1019 (Okl.1977).

Supreme Court's decision been before it at the time it permitted laetrile treatments. Although the United States Supreme Court subsequently determined that the Act's prohibition against the interstate distribution of any drug also applied without exception to terminally ill patients, in *United States v. Rutherford*, treatments procured from the time of the court order to the time of the issuance of the Court's mandate were legal and should be paid as covered expenses under the terms of the policy.[10] The insured's motion for summary judgment was properly sustained.

AFFIRMED.

All the Justices concur.

---

**10.** Oklahoma has subsequently expressed its public policy permitting the laetrile treatments in 63 O.S.Supp.1977 §§ 2–313.1, –313.6, the statute did not become effective until October 1, 1977.