LANE v. PROGRESSIVE NORTHERN INSURANCE CO.

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:LANE v. PROGRESSIVE NORTHERN INSURANCE CO.

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

LANE v. PROGRESSIVE NORTHERN INSURANCE CO.2021 OK 40Case Number: 118638Decided: 06/29/2021THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 40, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

 

ELISSA LANE; and KYLE STONE, as father and next friend of L.S., a minor, Plaintiffs/Appellants,
v.
PROGRESSIVE NORTHERN INSURANCE COMPANY, Defendant/Appellee.

CERTIFIED QUESTION FROM THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

¶0 The United States Court of Appeals for the Tenth Circuit certified a question of state law to this Court pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2011 §§ 1601--1611.

CERTIFIED QUESTION ANSWERED

Rex Travis, Margaret Travis, Travis Law Office, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Brad L. Roberson, Dawn M. Goeres, Roberson, Kolker, Cooper & Goeres, P.C., Edmond, Oklahoma, for Defendant/Appellee.

GURICH, J.

¶1 The United States Court of Appeals for the Tenth Circuit certified to this Court the following question of law:

Does Progressive's UM Exclusion--which operates to deny uninsured motorist coverage to insureds who recover at least the statutorily mandated minimum in the form of liability coverage--contravene Oklahoma's Uninsured Motorist Statute, codified at 36 O.S. § 3636?1

¶2 We answer with a "yes": Progressive's UM Exclusion violates the terms of 36 O.S. § 3636. Through this statute, Oklahoma requires insurers to supply uninsured-motorist coverage in addition to standard liability coverage. Where a policyholder has chosen to purchase uninsured-motorist coverage and the insurer has included it in the insurance contract in accord with section 3636--as here--our public policy requires protection up to the contracted-for limits. Because of the sweeping nature of the UM Exclusion contained in the insurance policy at issue, Progressive found a way to entirely avoid providing the promised coverage. In other words, Progressive's UM Exclusion violates public policy because an insurer in Oklahoma cannot deprive its policyholder of uninsured-motorist coverage for which a premium has been paid through an exclusion that effectively erases its policyholder's choice to purchase that coverage in the first place. We conclude that Progressive's UM Exclusion contravenes section 3636 and is therefore void as against public policy.

Facts and Procedural History

¶3 The federal court's certification order presents the underlying facts. In answering a certified question, this Court will not presume facts presented outside the certification order. Gov't Emps. Ins. Co. v. Quine, 2011 OK 88, ¶ 14, 264 P.3d 1245, 1249. "[O]ur examination is confined to resolving legal issues." Id. Nonetheless, the Court may "consider uncontested facts supported by the record." Siloam Springs Hotel, LLC v. Century Sur. Co., 2017 OK 14, ¶ 2, 392 P.3d 262, 263.

¶4 In 2017, the plaintiffs--Lane and Stone--were injured in a serious single-car rollover accident in Canadian County, Oklahoma while riding as passengers in a car driven by Stewart, a nonparty who was a minor at the time of the accident. Progressive Northern Insurance Company had insured the driver's vehicle under a policy issued to the parents of Stewart. Premiums were paid for both liability and uninsured-motorist coverage. The driver's policy provided liability coverage of $100,000 per person, with a $300,000 limit per accident (labeled under the policy as Part I--Liability to Others). Additionally, the policy provided uninsured-motorist coverage of $100,000 per person, with a $300,000 limit per accident (designated in the policy as Part III--Uninsured Motorist Coverage). Both Lane and Stone recovered the $100,000-per-person liability limit--but their injuries were substantial, and their damages exceeded $100,000. In light of their extensive injuries, Lane and Stone sought additional uninsured-motorist coverage from Progressive. Relying on an exclusion in the policy--referred to herein as the UM Exclusion--Progressive denied their claims.

¶5 Progressive's UM Exclusion states that uninsured-motorist coverage will not apply to "bodily injury sustained by an insured person where liability coverage for bodily injury in an amount equal to or greater than the minimum limits of liability required by the motor vehicle financial responsibility law of Oklahoma is available for said bodily injury under Part I--Liability to Others." In essence, the provision operates to exclude uninsured-motorist coverage when the insured receives liability coverage in an amount equal to or greater than the minimum limits of liability prescribed under Oklahoma law. Because Lane and Stone both recovered $100,000 under the policy's liability coverage--which is greater than the Oklahoma statutory minimum of $25,0002--Progressive denied their uninsured-motorist claims by relying on the UM Exclusion.

¶6 Following Progressive's refusal to pay, Lane and Stone sued for breach of contract and bad faith in federal district court in the Western District of Oklahoma. Progressive moved for a judgment on the pleadings, arguing its denial of uninsured-motorist coverage was warranted based on the UM Exclusion. In opposition to the motion, Lane and Stone asserted that Progressive's UM Exclusion is void as a matter of public policy under state law. Finding that Oklahoma law permits the UM Exclusion, the federal district court granted judgment in favor of Progressive. Lane and Stone appealed to the Tenth Circuit Court of Appeals, which certified to us the controlling, first-impression question of whether our uninsured-motorist-coverage statute--36 O.S. § 3636--forbids the type of UM Exclusion at issue.

Analysis

¶7 The federal court's certified question asks us to decide whether the public policy underlying a provision of the Oklahoma Insurance Code, 36 O.S. § 3636, voids a specific exclusion of uninsured-motorist coverage.3 This question is one of first impression and is governed by "no controlling Oklahoma precedent." Barrios v. Haskell Cty. Pub. Facilities Auth., 2018 OK 90, ¶ 6 n.6, 432 P.3d 233, 236 n.6.

¶8 Uninsured-motorist coverage is an important part of automobile-insurance coverage available to insureds in Oklahoma. An entire section of the Oklahoma Insurance Code is dedicated to defining the coverage and providing protections for policyholders. In pertinent part, our statute provides:

A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.

B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7-204 of Title 47 of the Oklahoma Statutes, as the same may be hereafter amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured. . . . The uninsured motorist coverage shall be upon a form approved by the Insurance Commissioner as otherwise provided in the Insurance Code . . . . 4

C. For the purposes of this coverage the term "uninsured motor vehicle" shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other.

* * *

G. A named insured or applicant shall have the right to reject uninsured motorist coverage in writing. The form signed by the insured or applicant which initially rejects coverage or selects lower limits shall remain valid for the life of the policy and the completion of a new selection form shall not be required when a renewal, reinstatement, substitute, replacement, or amended policy is issued to the same-named insured by the same insurer or any of its affiliates. Any changes to an existing policy, regardless of whether these changes create new coverage, do not create a new policy and do not require the completion of a new form.

36 O.S. Supp. 2016 § 3636(A)--(C), (G) (emphasis added).5

¶9 "Every provision of every Oklahoma statute 'is presumed to have been intended for some useful purpose and every provision should be given effect.'" Hamilton v. Northfield Ins. Co., 2020 OK 28, ¶ 8, 473 P.3d 22, 26 (quoting Darnell v. Chrysler Corp., 1984 OK 57, ¶ 5, 687 P.2d 132, 134). Before the Oklahoma Legislature amended section 3636 in 1979, the statutory text did not clearly address underinsured-motorist coverage. See 36 O.S. Supp. 1979 § 3636(C). But the 1979 amendment "significantly expanded the uninsured motorist provision to include underinsured motorist coverage." Russell v. Am. States Ins. Co., 813 F.2d 306, 309 (10th Cir. 1987) (per curiam). Pre-1979, the statute measured recovery by the available amount of per-person liability coverage. See id. Since the 1979 amendment, the statute has measured recovery by the value of the claim. 36 O.S. § 3636(C). Further, the Legislature proscribed insurers' ability to set-off uninsured-motorist coverage by the insured's collected liability benefits. See 36 O.S. Supp. 1979 § 3636(E); Burch v. Allstate Ins. Co., 1998 OK 129, ¶ 16, 977 P.2d 1057, 1064 ("When § 3636 was amended in 1979, the Legislature prohibited the reduction of a § 3636 claim by a set-off of benefits from the tortfeasor's liability policy.").

¶10 Our Legislature plainly differentiates between liability and uninsured-motorist coverage. The terms of 47 O.S. § 7-324 mandate the contents and coverage of a motor-vehicle-liability insurance policy within the Financial Responsibility chapter of the Oklahoma Highway Safety Code. Separately, 36 O.S. § 3636 (as part of the Oklahoma Insurance Code) requires insurers to include uninsured-motorist coverage within or supplemental to all motor-vehicle-liability policies, unless properly rejected by the named insured. Id. § 3636(B), (G). If the insured does not affirmatively decline uninsured-motorist coverage, the insurer must provide both the uninsured-motorist coverage and the liability coverage. Pursuant to section 3636, the Legislature specified that the minimum amounts of liability and uninsured-motorist coverage must be identical. See id. § 3636(B) (cross-referencing "the amounts or limits prescribed . . . for a policy" under 47 O.S. § 7-204). The Legislature did not, however, conflate or otherwise combine the coverages: liability coverage and uninsured-motorist coverage remain distinct.

¶11 The insurance policy that Progressive issued to Stewart's parents requires close examination.6 It contains discrete sections relating to motor-vehicle liability (titled "Part I--Liability to Others") and to uninsured-motorist coverage (clearly designated as "Part III--Uninsured Motorist Coverage"). Following a preamble and a section listing general definitions, the policy sets out the terms for bodily-injury liability coverage:

PART I--LIABILITY TO OTHERS

INSURING AGREEMENT

If you pay the premium for this coverage, we will pay damages for bodily injury and property damage for which an insured person becomes legally responsible because of an accident.

The policy next defines who qualifies as an insured:

ADDITIONAL DEFINITION

When used in this Part I:
"Insured person" means:
a. you, a relative, or a rated resident with respect to an accident arising out of the ownership, maintenance or use of an auto or a trailer;
b. any person with respect to an accident arising out of that person's use of a covered auto with the permission of you, a relative, or a rated resident . . . .

Part II of the policy deals with coverage for medical payments; its construction is outside the scope of this opinion.

¶12 This leads to Part III of the policy, which contains both the coverage-- and the exclusion of coverage--at the center of this dispute. It begins:

PART III--UNINSURED MOTORIST COVERAGE

INSURING AGREEMENT

If you pay the premium for this coverage, we will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
1. sustained by an insured person;
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of an uninsured motor vehicle.

As before, this section of the policy goes on to define who is an insured:

ADDITIONAL DEFINITIONS

When used in this Part III:
1. "Insured person" means:
a. you, a relative, or a rated resident;
* * *
c. any person occupying, but not operating, a covered auto[.]
* * *
2. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:
* * *
d. to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less than the insured person's damages.7

But this coverage provision is then directly followed by Progressive's UM Exclusion:

EXCLUSIONS--READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.

Coverage under this Part III will not apply:
* * *
6. to bodily injury sustained by an insured person where liability coverage for bodily injury in an amount equal to or greater than the minimum limits of liability required by the motor vehicle financial responsibility law of Oklahoma is available for said bodily injury under Part I--Liability to Others[.]8

¶13 "An insurance coverage contract required by Section 3636 must be liberally construed in favor of the object to be accomplished." May v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 1996 OK 52, ¶ 13, 918 P.2d 43, 48. And the "primary purpose of including uninsured motorist coverage in an insurance policy is to protect the insured from the effects of personal injury resulting from an accident with an uninsured/underinsured motorist." State Farm Auto Ins. Co. v. Greer, 1989 OK 110, ¶ 6, 777 P.2d 941, 942. This compels the conclusion that Progressive's UM Exclusion violates section 3636: the exclusion does not merely modify the scope of available uninsured-motorist coverage--it outright negates that coverage. While the policyholder holds an option to accept uninsured-motorist coverage, the insurer carries an obligation to provide it. Section 3636 requires uninsured-motorist coverage separate from liability coverage, whether it is provided within or supplemental to the basic liability policy. Progressive's blanket exclusion effectively ensures that only one form of coverage--for motor-vehicle liability--will ever be available, even though its policyholder has paid for both.

¶14 We apply "critical scrutiny" to "policy provisions which purport to dilute the legislatively mandated uninsured motorist coverage." State Farm Mut. Auto. Ins. Co. v. Wendt, 1985 OK 75, ¶ 4, 708 P.2d 581, 583. "[O]nce a person is insured under an uninsured motorist policy, subsequent exclusions inserted by the insurer in the policy which dilute and impermissi[b]ly limit uninsured motorist coverage are void as violative of the public policy espoused by" section 3636. Id.; see also Bernal v. Charter Cty. Mut Ins. Co., 2009 OK 28, ¶ 7 n.10, 209 P.3d 309, 312 n.10 (stating that "subsequent exclusions inserted by the insurer in the policy which dilute and impermissibly limit UM coverage are void as violative of the public policy" underlying section 3636).9 Underinsured-motorist coverage becomes necessary when an insured's damages (resulting from injury) exceed the underinsured driver's liability limits. In this case, the plaintiffs' significant injuries necessarily required that they have access beyond those liability limits--and in an amount obviously greater than the statutory minimum of $25,000 in liability coverage. Because the UM Exclusion never allows an insured the benefit of the bargained-for underinsured-motorist coverage, it cannot withstand the "critical scrutiny" required of exclusionary provisions under Oklahoma law. Wendt, 1985 OK 75, ¶ 4, 708 P.2d at 583.

¶15 In Ball v. Wilshire Insurance Co., we acknowledged that "[a] salient feature of our UM legislation, distinguishing it from compulsory liability insurance, is the latitude given to the policyholder or applicant to accept or reject UM coverage." 2009 OK 38, ¶ 28, 221 P.3d 717, 726--27. Although we have recognized that "the legislative intent with respect to UM coverage . . . could arguably be satisfied with the acceptance of UM insurance with agreed-upon exclusions from coverage," we have made it equally clear that an exclusion becomes impermissible when it fails to "protect and enforce the policyholder's choice to purchase" that protection. See id. ¶¶ 28--29, 221 P.3d at 727; see also Hartline v. Hartline, 2001 OK 15, ¶ 16, 39 P.3d 765, 771 ("Even in the absence of a violation of a law's express provision, an exclusion may nonetheless be invalid for nonconformity to the policy of the law."). In this case, Progressive's UM Exclusion cannot be reconciled with the public policy articulated through section 3636. See Hamilton, 2020 OK 28, ¶ 8, 473 P.3d at 26 (implicit in our interpretation of statutes is the "championing [of] the broad public policy purposes underlying them") (quotation omitted)).

¶16 This Court's jurisprudence is clear about what that public policy is: "The purpose of Oklahoma's statutory scheme is to 'assure each [UM insured] person the full contracted coverage' for which a premium has been paid." Burch, 1998 OK 129, ¶ 16, 977 P.2d at 1064 (alteration in original) (quoting Bohannan v. Allstate Ins. Co., 1991 OK 64, ¶ 13, 820 P.2d 787, 792). Here, the policyholders--the parents of a teenage driver--purchased (and paid premiums for) coverage that, by definition, included the plaintiffs in this case. The fact that the plaintiffs are classified as Class 2, as opposed to Class 1, insureds does not alter our analysis.10 This is because "coverage in each case stems not from owning an automobile, but from falling within the definition of an 'insured' under any given insurance contract." Shepard v. Farmers Ins. Co., 1983 OK 103, ¶ 7, 678 P.2d 250, 252. People buy insurance because accidents (often, serious ones) are an unavoidable fact of life. It is entirely reasonable for an Oklahoma family to anticipate the unpleasant possibility that their novice driver might take out the family car, get into an automobile accident, and injure her passengers. It is commendable to seek out and obtain insurance that gives protection beyond a policy's basic liability limits in the event of that major injury. Our Legislature not just expressly--but strongly--encourages Oklahoma residents to do so.11

¶17 In addition to the statutory protections, we are also guided by the longstanding proposition that "[i]nsurance contracts are contracts of adhesion." Wilson v. Travelers Ins. Co., 1980 OK 9, ¶ 8, 605 P.2d 1327, 1329. As such, they "are interpreted most strongly against the party that prepared the contract." Porter v. Okla. Farm Bureau Mut. Ins. Co., 2014 OK 50, ¶ 13, 330 P.3d 511, 515; see also Ball, 2009 OK 38, ¶ 27, 221 P.3d at 726 ("Statutorily mandated automobile insurance policies bear some characteristics of a public-law obligation under Oklahoma law and the full range of traditional freedom-of-contract principles do not apply."). Because insurance policies come on a "'take it or leave it' basis," the prospective insured cannot obtain the insurance without accepting the agreement exactly as written by the insurance company. Max True Plastering Co. v. U.S. Fid. & Guar. Co., 1996 OK 28, ¶ 7, 912 P.2d 861, 864. We will not permit an insurer to inappropriately leverage its uneven bargaining power to contract in a manner that misleads or deceives the policyholder about what he or she is actually buying. See Bohannan, 1991 OK 64, ¶ 14, 820 P.2d at 792 ("This Court has consistently protected the strength of our UM statute and the rights of an insured granted thereunder and purchased."). Progressive's UM Exclusion neither protects the policyholder's choice to accept uninsured-motorist coverage, nor represents a validly agreed-upon exclusion from that coverage.

¶18 We note that--when faced with the same situation in the Western District of Oklahoma--the Honorable Joe Heaton reached the opposite result of the trial judge in this case, holding that the Progressive UM Exclusion violates Oklahoma public policy because it runs afoul of section 3636's coverage mandate. Judge Heaton's analysis on this point is persuasive:

[B]ased upon the language of the exclusion, no insured who makes a claim for liability coverage under the Policy would ever be entitled to [UM] coverage under the Policy. [UM] coverage is only available when an insured's damages are greater than the limits of liability. Therefore, an insured who would be filing a [UM] claim would necessarily be receiving the full limits of the Policy's liability coverage, which would always be an amount equal to or greater than the minimum limits of liability required by Oklahoma's motor vehicle responsibility law, and the insured thus would always fall within the UM Exclusion and would never be entitled to [UM] coverage.

McKinney v. Progressive Direct Ins. Co., No. CIV-18-0767-HE, 2019 WL 11278463, at *4 (W.D. Okla. Apr. 24, 2019), appeal docketed, No. 19-6127 (10th Cir. Aug. 29, 2019). Indeed, the Tenth Circuit has pointedly termed this type of exclusion a "'Catch 22' provision" that "impermissibly limits the operation of § 3636." Russell, 813 F.2d at 311; see also Phillips v. N.H. Ins. Co., 263 F.3d 1215, 1220 (10th Cir. 2001) (noting this Court's consistent jurisprudence that "'protect[s] the insured's right to collect from the UM carrier'") (quoting Burch, 1998 OK 129, ¶ 8 n.14, 977 P.2d at 1061 n.14)).

¶19 It is undisputed that the injured plaintiffs, Lane and Stone, are covered (as vehicle passengers) by the Progressive policy's uninsured-motorist provision. It is likewise uncontested that their damages exceed the policy's $100,000-per-person liability limit. The vehicle involved in the accident meets the definition of an uninsured motor vehicle under the terms of both the insurance policy and section 3636. All of this would lead the reasonable Oklahoma policyholder to think--having affirmatively selected, and paid a premium for, uninsured-motorist coverage--that this coverage would apply in the event of an automobile accident resulting in serious injuries to their insureds in excess of the policy's liability limits.12 Yet, the artfully drafted language of the UM Exclusion guarantees that the plaintiffs will be completely denied uninsured-motorist coverage. To put it bluntly, "[t]his provision is a blatant attempt to limit the effect of [section] 3636." Greer, 1989 OK 110, ¶ 9, 777 P.2d at 943. "As such we must find it to be against public policy and, therefore, void and unenforceable." Id.

Conclusion

¶20 Liability coverage is not a substitute for uninsured-motorist coverage. Uninsured-motorist coverage must be conditioned upon the claim's value above available liability coverage, not upon the availability of minimum liability coverage. Progressive drafted the UM Exclusion in a way that ensured its policyholders would not actually get what they paid for. Guided by the principles underlying 36 O.S. § 3636, we hold that Progressive's UM Exclusion contravenes Oklahoma's strong public policy in favor of broadly available uninsured-motorist coverage.

CERTIFIED QUESTION ANSWERED.

Darby, C.J., Kauger (by separate writing), Edmondson, Combs, Gurich, JJ., concur;

Kane, V.C.J., Winchester, Rowe (by separate writing), JJ., dissent.

FOOTNOTES

1 We have not substantively reformulated the question of law certified to us, although it is within our discretion to do so. See 20 O.S. 2011 § 1602.1. We have altered the question only to conform it to this Court's citation conventions.

2 See 36 O.S. Supp. 2016 § 3636(B), (H)--(K); 47 O.S. Supp. 2016 §§ 7-103(2)(b), 7-324(B)(2).

3 In assessing whether to answer a certified federal question of law, we are guided by twin considerations: "(1) Would the answer be dispositive of an issue in pending litigation in the certifying court?"; and "(2) Is there established and controlling law on the subject matter?" Barrios v. Haskell Cty. Pub. Facilities Auth., 2018 OK 90, ¶ 6 n.6, 432 P.3d 233, 236 n.6.

4 The form's standard language is set forth in 36 O.S. § 3636(H), as follows:

Oklahoma law gives you the right to buy Uninsured Motorist coverage in the same amount as your bodily injury liability coverage. THE LAW REQUIRES US TO ADVISE YOU OF THIS VALUABLE RIGHT FOR THE PROTECTION OF YOU, MEMBERS OF YOUR FAMILY, AND OTHER PEOPLE WHO MAY BE HURT WHILE RIDING IN YOUR INSURED VEHICLE. YOU SHOULD SERIOUSLY CONSIDER BUYING THIS COVERAGE IN THE SAME AMOUNT AS YOUR LIABILITY INSURANCE COVERAGE LIMIT.

Uninsured Motorist coverage, unless otherwise provided in your policy, pays for bodily injury damages to you, members of your family who live with you, and other people riding in your car who are injured by: (1) an uninsured motorist, (2) a hit-and-run motorist, or (3) an insured motorist who does not have enough liability insurance to pay for bodily injury damages to any insured person. Uninsured Motorist coverage, unless otherwise provided in your policy, protects you and family members who live with you while riding in any vehicle or while a pedestrian. THE COST OF THIS COVERAGE IS SMALL COMPARED WITH THE BENEFITS!

You may make one of four choices about Uninsured Motorist Coverage by indicating below what Uninsured Motorist coverage you want:

____ I want the same amount of Uninsured Motorist coverage as my bodily injury liability coverage.

____ I want minimum Uninsured Motorist coverage $25,000.00 per person/$50,000.00 per occurrence.

____ I want Uninsured Motorist coverage in the following amount:

$______________ per person/$_________________ per occurrence.

____ I want to reject Uninsured Motorist coverage.

5 The current version of section 3636 went into effect on November 1, 2014 and is the version that applies to the Progressive policy at issue.

6 Progressive attached the insurance policy--entitled "Oklahoma Auto Policy"--as an exhibit to its January 28, 2019 answer to plaintiff Lane's complaint filed in the Western District of Oklahoma. The 30-page policy is included in the joint appendix submitted by the parties on appeal to the Tenth Circuit.

7 Progressive does not dispute that each plaintiff is an "insured person" and the vehicle involved in the accident is an "uninsured motor vehicle" for purposes of Part III's uninsured-motorist coverage. Although the policy lists seven separate exclusions for uninsured-motorist coverage under Part III, the only uninsured-motorist exclusion at issue is Exclusion 6.

8 The parties do not dispute that liability coverage for bodily injury in an amount greater than the minimum limits of liability required by the motor-vehicle-financial-responsibility law of Oklahoma is available under the liability coverage provided in Part I of the policy. As previously noted, the minimum limit of liability coverage required under the Oklahoma Statutes is $25,000. See 47 O.S. 2011 §§ 7-103(2)(b), 7-324(B)(2).

9 See also Brown v. United Servs. Auto. Ass'n, 1984 OK 55, ¶ 6, 684 P.2d 1195, 1198 ("It is settled in Oklahoma that insurance policy provisions and definitions which purport to condition, limit or dilute the provisions of the uninsured motorist statute are void and unenforceable.").

10 Named insureds and resident relatives are Class 1 insureds; Class 2 insureds--such as the plaintiffs in this case--are individuals insured under a policy by virtue of their occupancy or permissive use of a covered vehicle. Am. Econ. Ins. Co. v. Bogdahn, 2004 OK 9, ¶ 12, 89 P.3d 1051, 1054--55.

11 The statute includes strong and unequivocal language requiring Oklahoma insurance companies to advise their proposed insureds on the importance of obtaining uninsured-motorist coverage. 36 O.S. § 3636(H) (directing insurers to provide forms containing the following--or substantially similar--language: "Oklahoma law gives you the right to buy Uninsured Motorist coverage in the same amount as your bodily injury liability coverage. THE LAW REQUIRES US TO ADVISE YOU OF THIS VALUABLE RIGHT FOR THE PROTECTION OF YOU, MEMBERS OF YOUR FAMILY, AND OTHER PEOPLE WHO MAY BE HURT WHILE RIDING IN YOUR INSURED VEHICLE. YOU SHOULD SERIOUSLY CONSIDER BUYING THIS COVERAGE IN THE SAME AMOUNT AS YOUR LIABILITY INSURANCE COVERAGE LIMIT.").

12 See Hamilton v. Northfield Ins. Co., 2020 OK 28, ¶ 10, 473 P.3d 22, 26 (observing that this Court interprets provisions of the Oklahoma Insurance Code "in their plain and ordinary sense----just as would the layperson who purchases an insurance policy, suffers a covered loss, and submits proof of that loss to the insurer").

 

 

KAUGER, J., concurring:

¶1 The dissent admits that the UM exclusion may border on furtiveness. The definition of furtiveness from Webster's New International Second Edition is: 1. "Done, obtained, or characterized by stealth; hence, sly; secret; stealing; as a furtive look; and 2. Obtained by theft; stolen; also given to theft."

¶2 The definition is explained by the definition from Vocabulary.com: "The adjective furtive is related it furtum, the Latin word for theft or robbery. This is apparent as the expressions "to give a furtive glance" and "to steal a glance at someone" means the same thing. If a person's manner is furtive, he or she is acting suspiciously. Secret, stealthy and sly are all similar in meaning, but they lack the image of a thief's actions."

¶3 None of the definitions and synonyms represent the openness and transparency required in good faith dealings. The substitution of any of these words in the sentence "While UM exclusion of this type may border on furtiveness, and the coverage it affords may be less than optimal, it at least meets the threshold for compliance with Oklahoma law and public policy." WRONG!

"Synonyms & Antonyms of furtive

1. given to acting in secret and to concealing one's intentions

// a furtive guy who always seems to be up to something, and usually that something is no good

Synonyms for Furtive

shady, shifty, slippery, sly, sneaking, sneaky, stealthy

Words Related to furtive

artful, crafty, cunning, devious, foxy, guileful, slick, wily

close, closemouthed, reticent, secretive

clandestine, covert, dark

deceitful, deceiving, deceptive, devious, duplicitous, trickish, tricky, underhand, underhanded

cheating, crooked defrauding, dishonest, dissembling, double-dealing, knavish, two-faced lying, mendacious, untrustworthy, untruthful

insidious, perfidious, serpentine, treacherous

¶4 This is a contract of adhesion, and its language violates the public policy of the state of Oklahoma. An insurance contract should be open and transparent. Neither the Legislature intent nor our extant jurisprudence authorizes or approves the implementation of a border-line theft.

 

 

ROWE, J., with whom Kane, V.C.J., and Winchester, J., join, dissenting:

¶1 Lane and L.S. were injured in this single-car accident while riding as passengers in a vehicle driven by a non-party minor, M.S. At the time of the accident, M.S.'s vehicle was insured by Appellee, Progressive Northern Insurance Company ("Progressive"), under a policy issued to M.S.'s parents. The Progressive policy provided liability coverage in the amount of $100,000.00 per person, with $300,000.00 per accident limit. The Progressive policy also provided uninsured/underinsured motorist ("UM") coverage with the same limits on compensation. Lane and L.S. asserted liability claims against M.S. and her parents. Progressive tendered the full $100,000.00 in per-person liability benefits available under the policy to Lane and L.S., each, separately.

¶2 Lane also submitted a UM claim to USAA, her own insurer, and USAA tendered to Lane the full UM benefits available under that policy. Likewise, L.S. submitted a UM claim to her father's insurer, Farmers Insurance Company, which tendered to L.S. the full UM benefits available under her father's policy.

¶3 Lane and L.S., by virtue of being passengers in M.S.'s vehicle, qualified as Class 2 insureds under the Progressive policy.1 As such, they also submitted claims for UM benefits to Progressive. Progressive denied their claims for UM benefits, citing the UM Exclusion at issue, which precludes recovery of UM benefits by insureds who recover at least the statutorily-mandated minimum amount in liability benefits.

¶4 The issue before this Court is whether the UM Exclusion contravenes Oklahoma law, in particular 36 O.S. § 3636 ("the UM statute"). The Oklahoma Legislature first enacted the UM statute in 1968. The majority finds that the UM Exclusion contravenes Oklahoma law because it "neither protects the policy holder's choice to accept uninsured-motorist coverage, nor represents a validly agreed upon exclusion from that coverage." See Majority Op. ¶ 17. In reaching this conclusion, the majority notes that insurance contracts are contracts of adhesion, and as such they are interpreted most strongly against the party that prepared the contract. Id. (citing Wilson v. Travelers Ins., 1980 OK 9, ¶ 8, 605 P.2d 1327, 1329; Porter v. Okla. Farm Bureau Mut. Ins., 2014 OK 50, ¶ 13, 330 P.3d 511, 515; Ball v. Wilshire Ins., 2009 OK 38, ¶ 27, 221 P.3d 717, 726).

¶5 The majority's analysis to support a finding that the UM Exclusion violates Oklahoma public policy, however, is misplaced. In Ball v. Wilshire Insurance Co., we identified the standard for determining whether a provision in an insurance contract violates public policy:

A contract violates public policy only if it clearly tends to injure public health, morals or confidence in the administration of law, or if it undermines the security of individual rights with respect to either personal liability or private property. Courts exercise their power to nullify contracts made in contravention of public policy only rarely, with great caution and in cases that are free from doubt.

2009 OK 38, ¶ 27, 221 P.3d at 726. Because this standard is so exacting, we have consistently upheld UM exclusions as consistent with Oklahoma's public policy contained within the UM statute.2

 

¶6 "The Oklahoma Legislature, not this Court or Congress, is primarily vested with the responsibility to declare the public policy of this state." Siloam Springs Hotel, L.L.C. v. Century Sec. Co., 2017 OK 14, ¶ 21, 392 P.3d 262, 268. Thus, the public policy of Oklahoma in regard to UM coverage is that which the Legislature has set forth in 36 O.S. § 3636.

 

¶7 Importantly, the statute does not list exclusions which are permitted or not permitted, nor does it expressly require that any class of persons or type of incident be covered under a UM policy. Unlike Oklahoma's compulsory liability insurance law, the UM statute gives an applicant for insurance the right to completely reject UM coverage.3 "If the legislative intent with respect to UM coverage is satisfied without any such coverage in a policy, it could arguably be satisfied with the acceptance of UM insurance with agreed-upon exclusions from coverage." Ball, 2009 OK 38, ¶ 28, 221 P.3d at 726. Additionally, the statutorily-required form, which insurers must substantially use to offer UM coverage to applicants, describes the general nature of UM coverage, including various classes of insureds and various instances in which UM coverage would apply. See 36 O.S. § 3636(H). Also of importance, the form contains the qualifying language, "unless otherwise provided in your policy," which suggests the Legislature contemplated valid exclusions to UM policies. Thus, nothing in the text of the statute explicitly precludes the UM Exclusion at issue here.

¶8 In addition to being consistent with the text of the UM statute, the UM Exclusion also comports with the statute's broader public policy, as we have previously identified. "The purpose of the uninsured motorist provision, when viewed in light of the requirement that it provide minimum standards of protection, is that it place the insured in the same position he would have been in if the negligent uninsured motorist had complied with Oklahoma laws concerning financial responsibility." May v. Nat'l Union Fire Ins. of Pittsburgh, Pa., 1996 OK 52, ¶ 8, 918 P.2d 43, 46 (quoting Moser v. Liberty Mut. Ins., 1986 OK 78, ¶ 5, 731 P.2d 406, 408). The Progressive policy at issue excludes insureds from UM coverage only when they receive liability payment in an amount equal to our state's statutorily-mandated minimum liability requirement. Put another way, even with the UM Exclusion, an insured under the Progressive policy will obtain at least the statutory minimum in coverage by way of either the negligent driver's liability policy or the UM policy. Thus, the UM Exclusion comports with the public policy of the UM statute as established by the Legislature and recognized in Moser and May.

¶9 Finally, the majority's analysis produces an illogical result in light of our prior decisions. In Hartline v. Hartline, we described liability insurance and uninsured motorist coverage as "two components of an increasingly integrated system of automobile insurance" and imposed on insurers an obligation to provide the statutory minimum in coverage to Class 1 insureds via one of these components. 2001 OK 15, ¶ 20, 39 P.3d 765, 772-73. Progressive notes that the policy in question was developed in response to Hartline and that the UM Exclusion would comply with its obligation under that decision, with respect to Class 1 insureds. Today's opinion disallowing the exclusion with respect to Class 2 insureds, in effect, allows Class 2 insureds to recover liability and UM benefits in excess of what a Class 1 insured can recover under the same policy. Affording unnamed insureds, who stand to benefit only by virtue of their occupancy in an insured vehicle, greater protection than named insureds, is an illogical result and inconsistent with Oklahoma's public policy.

¶10 While a UM exclusion of this type may border on furtiveness, and the coverage it affords may be less than optimal, it at least meets the threshold for compliance with Oklahoma law and public policy. If the Legislature had intended to disallow this type of exclusion, it could have easily done so--or can do so in the future. However, as written, the black letter of Oklahoma's UM statute reflects the Legislature's intent to permit exclusions to UM policies--as does our extant jurisprudence on UM coverage.

¶11 Accordingly, I respectfully dissent.

FOOTNOTES

1 Class 1 insureds include "named insureds and resident relatives," whereas Class 2 insureds include "individuals insured in the policy only by reason of their occupancy or permissive use of a covered vehicle." American Econ. Ins. v. Bogdahn, 2004 OK 9, ¶ 12, 89 P.3d 1051, 1054-55.

2 See, e.g., Graham v. Travelers Ins., 2002 OK 95, 61 P.3d 225 (holding commercial auto policy that provided liability coverage for employees' vehicles when used to perform company business yet limited UM coverage to company-owned vehicles did not violate public policy); Shepard v. Farmers Ins., 1983 OK 103, 678 P.2d 250 (holding a UM policy excluding coverage for a relative residing with the named insured and who owned an automobile does not contravene § 3636 or its underlying policy).

3 Section 3636(G) provides, "A named insured or applicant shall have the right to reject uninsured motorist coverage in writing."

 

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Supreme Court Cases
 CiteNameLevel

 1986 OK 78, 731 P.2d 406, 57 OBJ 3019, Moser v. Liberty Mut. Ins. Co.Discussed
 1989 OK 110, 777 P.2d 941, 60 OBJ 1781, State Farm Auto. Ins. Co. v. GreerDiscussed at Length
 1991 OK 64, 820 P.2d 787, 62 OBJ 2093, Bohannan v. Allstate Ins. Co.Discussed at Length
 2001 OK 15, 39 P.3d 765, 72 OBJ 562, HARTLINE v. HARTLINEDiscussed at Length
 2002 OK 95, 61 P.3d 225, GRAHAM v. TRAVELERS INSURANCE COMPANYDiscussed
 2004 OK 9, 89 P.3d 1051, AMERICAN ECONOMY INSURANCE COMPANY v. BOGDAHNDiscussed at Length
 1996 OK 28, 912 P.2d 861, 67 OBJ 806, Max True Plastering Co. v. U.S. Fidelity and Guar. Co.Discussed
 1996 OK 52, 918 P.2d 43, 67 OBJ 1262, May v. National Union Fire Insurance Co.Discussed at Length
 2009 OK 28, 209 P.3d 309, BERNAL v. CHARTER COUNTY MUTUAL INSURANCE CO.Discussed
 2009 OK 38, 221 P.3d 717, BALL v. WILSHIRE INSURANCE CO.Discussed at Length
 2011 OK 88, 264 P.3d 1245, GOVERNMENT EMPLOYEES INSURANCE CO. v. QUINEDiscussed
 1980 OK 9, 605 P.2d 1327, Wilson v. Travelers Ins. Co.Discussed at Length
 2014 OK 50, 330 P.3d 511, PORTER v. OKLAHOMA FARM BUREAU MUTUAL INSUR. CO.Discussed at Length
 2017 OK 14, 392 P.3d 262, SILOAM SPRINGS HOTEL, LLC v. CENTURY SURETY COMPANYDiscussed at Length
 2018 OK 90, 432 P.3d 233, BARRIOS v. HASKELL COUNTY PUBLIC FACILITIES AUTHORITY; FOUTCH v. TURN KEY HEALTHDiscussed at Length
 2020 OK 28, 473 P.3d 22, HAMILTON v. NORTHFIELD INSURANCE CO.Discussed at Length
 1998 OK 129, 977 P.2d 1057, 70 OBJ 46, Burch v. Allstate Insurance CompanyDiscussed at Length
 1983 OK 103, 678 P.2d 250, Shepard v. Farmers Ins. Co., Inc.Discussed at Length
 1984 OK 55, 684 P.2d 1195, Brown v. United Services Auto. Ass'nDiscussed
 1984 OK 57, 687 P.2d 132, Darnell v. Chrysler Corp.Discussed
 1985 OK 75, 708 P.2d 581, State Farm Mut. Auto. Ins. Co. v. WendtDiscussed at Length
Title 20. Courts
 CiteNameLevel

 20 O.S. 1601, Short TitleCited
 20 O.S. 1602.1, Power to Reformulate QuestionCited
Title 36. Insurance
 CiteNameLevel

 36 O.S. 3636, Uninsured Motorist CoverageDiscussed at Length
Title 47. Motor Vehicles
 CiteNameLevel

 47 O.S. 7-103, DefinitionsDiscussed
 47 O.S. 7-204, Requirements as to Motor Vehicle Liability PolicyCited
 47 O.S. 7-324, Motor Vehicle Liability Policies - Contents and CoveragesCited

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA