**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 9, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TALLIE MCKINNEY,

    Plaintiff - Appellee,

v.

PROGRESSIVE DIRECT INSURANCE
COMPANY, a/k/a Progressive,

    Defendant - Appellant,

and

CSAA GENERAL INSURANCE
COMPANY, d/b/a AAA Insurance,

    Defendant.

_____

No. 19-6127
(D.C. No. 5:18-CV-00767-HE)
(W.D. Okla.)

TALLIE MCKINNEY,

    Plaintiff - Appellant,

v.

CSAA GENERAL INSURANCE
COMPANY, d/b/a AAA Insurance,

    Defendant - Appellee,

and

PROGRESSIVE DIRECT INSURANCE
COMPANY, d/b/a Progressive,

    Defendant.

_____

No. 19-6130
(D.C. No. 5:18-CV-00767-HE)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

———————————————————

Before **MATHESON**, **BRISCOE**, and **PHILLIPS**, Circuit Judges.

———————————————————

Defendant Progressive Direct Insurance Company (Progressive) appeals the district court's denial of its motion for summary judgment. Plaintiff Tallie McKinney (McKinney) appeals the district court's grant of summary judgment in favor of defendant CSAA General Insurance Company (CSAA). These interrelated appeals arose from the same district court case and are resolved together here. The district court did not err in denying Progressive's motion for summary judgment or in granting CSAA's motion for summary judgment. Accordingly, we AFFIRM.

**I**

McKinney was a passenger in a car driven by Sierra Shannon. Shannon caused a single-car accident, and McKinney sustained injuries. Shannon and the car were covered by an insurance policy with Progressive, and McKinney was covered by an insurance policy with CSAA. The Progressive policy provided bodily injury liability coverage with a limit of $100,000.00 per person and $300,000.00 per accident, and uninsured or underinsured motorist ("UM") coverage, also with a limit of $100,000.00 per person and $300,000.00 per accident. Progressive paid McKinney the $100,000.00 limit in liability coverage but refused to pay anything

———————————————————

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2

under the UM coverage provision, asserting McKinney was subject to an exclusion in the UM coverage.  CSAA obtained some medical records and evaluated McKinney's claim.  CSAA employee Brett Greiwe averred that CSAA used a medical authorization to obtain McKinney's medical records in its investigation of her claim.  It assessed the amount of medical expenses paid at $33,482.88[1] and determined her range of general damages was $75,000.00–$85,000.00.  Thus, it valued her total claim at $108,482.88–$118,482.88.  As Progressive had already paid $100,000.00, CSAA offered $8,482.88 but conditioned payment on McKinney signing a release.  McKinney rejected the offer without a counteroffer or any attempt to discuss the evaluation.

McKinney sued Progressive and CSAA in Oklahoma state court, and the case was removed to the Western District of Oklahoma pursuant to diversity jurisdiction.  McKinney asserted breach of contract against Progressive, arguing the UM exclusion was not valid under Oklahoma law and that she was entitled to recover under the UM coverage.  She asserted bad faith against CSAA, claiming it improperly low-balled its offer and did not tender partial payment.  After the suit was filed, CSAA re-evaluated McKinney's claim at $133,888.04–$158,888.04 and offered McKinney $33,888.04, but McKinney never responded to the new offer.  The insurance companies moved

---

[1] There is some uncertainty as to the precise value of McKinney's medical expenses at that time.  *Compare* CSAA JA at 88 (averring CSAA evaluated total verified medical expenses at $33,482.88), *with* CSAA JA at 143 (listing total amount of medical expenses paid at $32,763.70).  Despite these inconsistencies, the numbers are close, and well below the $100,000.00 already paid by Progressive, so the precise value does not affect our analysis of the bad faith claim.

for summary judgment.  The district court denied Progressive's motion, finding its UM exclusion void under Oklahoma public policy, and allowing a trial on the contract claim.  The district court granted CSAA's motion, dismissing the bad faith claim.  A jury then found for McKinney on the contract claim and assessed her damages at $325,000.00, which the district court reduced to $225,000.00 given Progressive's previous payment of $100,000.00 in liability coverage.

Progressive appeals the district court's denial of its motion for summary judgment on McKinney's breach of contract claim, and McKinney appeals the district court's grant of summary judgment to CSAA on McKinney's bad faith claim.

## II

We "review[] a district court's decision on a summary judgment motion de novo, applying the standard set out in Rule 56(a) of the Federal Rules of Civil Procedure."  *Reorganized FLI, Inc. v. Williams Cos., Inc.*, 1 F.4th 1214, 1218 (10th Cir. 2021).  "Under that standard, a 'court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Id*. (quoting Fed. R. Civ. P. 56(a)).

## A

The district court's denial of Progressive's motion for summary judgment on McKinney's breach of contract claim is affirmed because the UM exclusion in Progressive's policy is void as a matter of law, and UM coverage therefore applies to McKinney.  In another case involving an identical UM provision, the Oklahoma Supreme Court responded to a certified question and resolved this issue.  *See Lane v.*

4

*Progressive N. Ins. Co.*, No. 19-6085, 2021 WL 4592266 (10th Cir. Oct. 6, 2021)

(unpub.); *Lane v. Progressive N. Ins. Co.*, 494 P.3d 345 (Okla. 2021).  McKinney and

Progressive both acknowledge that the issue here is indistinguishable from the issue

in *Lane*.  *See* McKinney Aplt. Br. at vii; Progressive Aple. Br. at 1.  We agree, noting

that both cases deal with identical policies and involve "Class 2" insureds

(individuals who are covered by virtue of their presence in the covered vehicle).

    In *Lane*, the district court granted summary judgment to Progressive,

upholding the same broad UM exclusion at issue here.  A panel of this court certified

a question to the Oklahoma Supreme Court, asking whether the public policy

underlying Oklahoma's UM insurance statute, Okla. Stat. tit. 36, § 3636, prohibits

Progressive's UM exclusion.  The Oklahoma Supreme Court concluded it did.  The

Court held that "Progressive's UM Exclusion violates public policy because an

insurer in Oklahoma cannot deprive its policyholder of uninsured-motorist coverage

*for which a premium has been paid* through an exclusion that effectively erases its

policyholder's choice to purchase that coverage in the first place."  *Lane*, 494 P.3d at

346.  It therefore voided the exclusion, effectively removing it from the policy.  *Id.* at

353.  After resolution of the certified question, this court reversed the district court's

grant of summary judgment.  *See Lane*, 2021 WL 4592266 at *2.  As *Lane* is

indistinguishable from this case, we affirm the district court's grant of summary

judgment.

    Additionally, we reject Progressive's argument that, if the UM exclusion is

voided, it can still limit coverage to $25,000.00.  *Lane* is dispositive of this issue

even though the parties arguably framed it separately from the certified question in *Lane*. Progressive cites cases that read a limit of $25,000.00 of UM coverage into policies, but they are distinguishable. Those cases deal with whether UM coverage is imputed into policies that violate Oklahoma law by not including adequate UM coverage. *See, e.g.*, *May v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 918 P.2d 43, 44 (Okla. 1996). Here, the policy includes a per-person limit of $100,000.00 in UM coverage, for which a premium was paid. Rather than simply lift the void UM exclusion out of the policy, Progressive asks us to treat the policy as if UM coverage was not included in the first place. But the Oklahoma Supreme Court was clear that Progressive customers cannot be deprived of the benefit of their bargain by a broad UM exclusion. *See Lane*, 494 P.3d at 351. And the coverage bargained and paid for here was up to $100,000.00 per person. Simply voiding the UM exclusion and then reading the policy, the limit under the UM coverage is $100,000.00 per person. Accordingly, the district court's denial of Progressive's motion for summary judgment is affirmed.

## B

The district court's grant of summary judgment to CSAA on McKinney's bad faith claim is also affirmed. To establish a claim of bad faith under Oklahoma law, a plaintiff "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1314 (10th Cir. 2019) (quoting *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir.

1993)).  Where there is a "legitimate dispute" about the amount of coverage, an inference of bad faith does not arise.  *Id.* at 1316.  If such a dispute exists, courts "grant judgment for the insurer unless the insured can offer additional evidence of bad faith."  *Id.*  McKinney has not presented a dispute of material fact, and CSAA is entitled to summary judgment.

McKinney argues that CSAA acted in bad faith because its investigation of her claim was inadequate and it did not promptly pay the undisputed portion of the claim. Specifically, McKinney asserts that: (1) a reasonable jury could conclude that CSAA could have, but did not, request medical bills from providers; (2) a reasonable jury could (and did) conclude that McKinney's injuries exceeded the available liability insurance; and (3) a reasonable jury could conclude that the failure to pay any UM benefits at all was in bad faith.  These arguments are unpersuasive.

First, CSAA submitted an affidavit saying it used the medical authorization to obtain medical information from providers, so CSAA presented at least some evidence that it conducted a reasonable investigation of the claim.  McKinney nevertheless contends that the affidavit does not support CSAA's assertion that its investigation was reasonable because it is unclear how CSAA used the authorization. McKinney concedes that she "has not presented evidence to dispute Greiwe's affidavit, and as such cannot dispute that CSAA 'used' the medical authorization." McKinney Reply at 2.  She suggests that a later, higher evaluation indicates that the initial evaluation was based on incomplete records.  But she offers no proof that CSAA's new evaluation relied on information that was available to CSAA at the time

of the first evaluation and that CSAA should have, but failed to, obtain or consider this information. Indeed, she does not identify what these excluded materials might be. While the reasonability of CSAA's investigation is within the province of the jury, McKinney offers nothing but speculation that the initial evaluation was unreasonable. As such, McKinney's contention that CSAA did not adequately use the authorization remains little more than an unsupported hunch.

Second, McKinney does not support her assertion that CSAA's low offer itself demonstrates bad faith. The offer may have been low, but McKinney offers no indication that it was so low as to show bad faith. She cites no precedent indicating how low an offer must be to constitute bad faith. She does not cite any precedent indicating that a low offer can itself be evidence of bad faith. Admittedly, even CSAA's post-suit valuation is far from the jury's eventual valuation, but nothing in the record, and certainly nothing in the record at the time the district court granted summary judgment, indicates CSAA deliberately lowballed the offer. CSAA presented an affidavit showing some evidence that the claim was investigated and evaluated, and its offer was in-line with that evaluation. Neither McKinney's opinion nor the jury's conclusion that the offer was low, without more, could lead a reasonable juror to conclude that CSAA lowballed its offer in bad faith.

Third, CSAA argues that McKinney abandoned her bad faith failure to pay argument, and McKinney does not contest this in reply. Nevertheless, as McKinney mentions the argument in her opening brief, we address the claim. Greiwe averred that CSAA evaluated McKinney's medical bills at less than the amount recovered

8

from Progressive.  Under Oklahoma law, refusal to tender partial payments of UM benefits without a release does not constitute bad faith if: (1) economic or special damages have been recovered through liability insurance; (2) the UM insurer has promptly investigated and valued the claim; (3) the total amount of noneconomic or general damages is legitimately disputed; and (4) an agreement or judgment does not set the value of the insured's damages.  *Gov't Emps. Ins. Co. v. Quine*, 264 P.3d 1245, 1251 (Okla. 2011).  CSAA refused to tender payment without a release, but as noted above, there is no dispute of fact that: CSAA believed McKinney made full recovery on her medical bills; CSAA investigated and valued the claim; there was a legitimate dispute about the value of the claim; and, at the time, no agreement or judgment valued McKinney's damages.  Therefore, as a matter of law, CSAA's refusal to tender payment without a release does not in and of itself constitute bad faith.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge